RICHARD J. TODD AND DENESE W. TODD, PETITIONERS *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 8227-86.        Filed October 26, 1987.

*Martin N. Gelfand* and *William Weintraub,* for the
petitioners.

*Martin D. Cohen* and *William H. Quealy, Jr.,* for the
respondent.

## OPINION

COHEN, *Judge*: In *Noonan v. Commissioner,* T.C. Memo.
1986-449, we found that petitioners Richard J. Todd and
Denese W. Todd (the Todds) purchased two FoodSource
containers by agreements dated December 8, 1981, and a
third container by an agreement dated October 14, 1982.
The Todds' containers were, however, the subject of a
dispute between the seller, FoodSource, Inc., and the
manufacturer, Budd Co., and were not released to the Todds
or placed in service prior to November 29, 1983. The issue
for decision here is whether the Todds are liable for
additions to tax under section 6659.[1]

The deficiencies in issue in *Noonan* with respect to the
Todds were for 1979, 1980, 1981, and 1982. The deficiencies
for 1981 and 1982 resulted from disallowance of investment
tax credits, depreciation deductions, and miscellaneous de-
ductions relating to the containers. The deficiencies for 1979
and 1980 resulted from carryback of the unused investment
tax credits from 1981 and 1982.

The consolidated cases decided in *Noonan* involved vari-
ous test-case petitioners with circumstances differing from

---

[1]All section references are to the Internal Revenue Code as amended and in effect during the
years in issue, except as otherwise noted.

those of the Todds. All petitioners claimed investment tax credits and deductions based on a sales price of $260,000 per container. We determined that the containers purchased by certain of those test-case petitioners, Henricks and Hillendahl, had been placed in service during the years in issue. We concluded that the correct basis of each petitioner in his or her container did not include long-term purchase debt and was limited to the actual cash payments made by the purchaser up to a fair market value of not more than $60,000. Thus, to the extent that the basis claimed on a return exceeded the correct basis determined by us, there was a valuation overstatement for purposes of section 6659. We stated:

Certain of the petitioners, including the test case petitioners identified in our findings, will have their investment tax credits and depreciation deductions disallowed during the years in issue because the containers in which they invested were detained by Budd and not placed in service during the years in issue. Other petitioners may or may not have their deductions disallowed upon application of section 183 after further hearings. With respect to petitioners Henricks and Hillendahl, however, their respective claimed investment tax credits and depreciation deductions will be reduced in accordance with our finding that their adjusted basis for purposes of the investment tax credit must be reduced by the amounts of the notes and, to the extent represented by cash, limited to the maximum fair market value of the container interest. Once those adjustments to basis have been made in the individual cases, the additions to tax under section 6659(a), presumably in the amount of 30 percent under section 6659(b), will apply to the portion of the underpayment of each petitioner attributable to the difference between the adjusted basis claimed on the petitioner's return and the amount determined to be the correct adjusted basis. See section 6659(c)(1). [*Noonan v. Commissioner, supra,* 52 T.C.M. 534, at 553, 55 P-H Memo. T.C. par. 86-449, at 2081-2082.]

The Todds here contend that the underpayments of their taxes for the years in issue resulting from our "not placed in service" finding are not "attributable to" the valuation overstatements claimed on their returns. Disagreeing, respondent first suggests that, where property is not placed in service, taxpayers acquire no basis in the property and that, under *Zirker v. Commissioner,* 87 T.C. 970, 979 (1986), the addition to tax under section 6659 applies to the full amount of the underpayment. We are not persuaded by this suggestion. Taxpayers are not entitled to depreciation

deductions or investment tax credits prior to the time that property is placed in service. Computation of basis, however, is independent of the date on which deductions or credits commence. See secs. 1011-1016. A taxpayer may have a basis in property, such as property held for personal use, that has no tax significance unless and until the property is sold. In *Zirker v. Commissioner, supra,* we held that there was no sale and, for that reason, the taxpayers had no basis in the subject property. Here we have found that the Todds actually purchased three containers. They did, therefore, have a basis in those containers from the time they made their cash investment, regardless of when the containers were placed in service.

Respondent has chosen, however, to seek the addition to tax under section 6659 only with respect to the difference between the basis claimed on the return, $260,000 per container, and petitioners' cash investment, $52,000 per container. Respondent's position is set forth as follows:

Logic and fairness dictate that the Todds not fare better than Hillendahl and Henricks on the implausible grounds that the Todds' situation suffers from greater infirmities. * * *

In the context of this case respondent reads section 6659 as saying, in simple terms:

If an income tax deficiency results because deductions or credits relating to a business asset are not allowable, and if the amount of such deficiency would have been less but for the reporting of an unjustifiably high basis for the asset, how can it be gainsaid that, in the language of section 6659(a), a percentage of the understatement of tax is attributable to a valuation overstatement?

To conclude otherwise would lead to the anomalous result that parties who were conscientious enough to ensure that their overvalued assets were actually placed in service would be liable for the additions to tax while others, who were less conscientious in this regard, but who similarly overstated their basis in fully identical assets, would not. Similarly, those petitioners who failed to demonstrate profit motive or to overcome inferences of pure tax motivation could presumably escape sec. 6659 liability, notwithstanding gross overvaluation, simply because their containers had not been placed in service. [Fn. ref. omitted.]

Further, respondent argues that, as to the later years (1983 and 1984 in this case), when the property is placed in service, petitioners will have the benefit of our opinion in *Noonan* and may avoid the additions to tax under section 6659 by not claiming a valuation overstatement.

Respondent is asking us, in effect, to apply section 6659 whenever an underpayment is attributable to a transaction involving or accompanied by a valuation overstatement. We are not persuaded, however, that respondent's interpretation is an appropriate one under the statute.

The pertinent language of section 6659 is as follows:

SEC. 6659(a). ADDITION TO THE TAX.—If—
 (1) an individual, or
 (2) a closely held corporation or a personal service corporation,

has an underpayment of the tax imposed by chapter 1 for the taxable year which is attributable to a valuation overstatement, then there shall be added to the tax an amount equal to the applicable percentage of the underpayment so attributable.

     \*     \*     \*     \*     \*     \*     \*

(c) VALUATION OVERSTATEMENT DEFINED.—
 (1) IN GENERAL.—For purposes of this section, there is a valuation overstatement if the value of any property, or the adjusted basis of any property, claimed on any return is 150 percent or more of the amount determined to be the correct amount of such valuation or adjusted basis (as the case may be).

We have previously held that underpayments resulting from carrybacks to years prior to December 31, 1981, from returns filed after December 31, 1981, are subject to section 6659. Such underpayments are attributable to the valuation overstatements on the returns filed after December 31, 1981 (in this case the returns for 1981 and 1982). *Nielsen v. Commissioner,* 87 T.C. 779 (1986).

Section 6659 was originally enacted as part of the Economic Recovery Tax Act of 1981 (ERTA), Pub. L. 97-34, 95 Stat. 341. The language describing its extent in the Conference report accompanying the bill is brief. It states:

The bill provides a graduated addition to tax applicable to certain income tax "valuation overstatements." The addition to tax applies only to the extent of any income tax underpayment which is attributable to such an overstatement \* \* \* [H. Rept. 97-215 (Conf.), at 262 (1982), 1981-2 C.B. 481, 515.]

The General Explanation by the Staff of the Joint Committee on Taxation, however, is more detailed.[2] The provision is there explained as follows:

---

[2]Although the General Explanation, or "Blue Book," prepared by the Staff of the Joint Committee on Taxation is technically not considered "legislative history," the Supreme Court

*Overview*

The Act provides a new penalty in the form of a graduated addition to tax applicable to certain income tax "valuation overstatements." As an addition to tax, this penalty will be assessed, collected, and paid in the same manner as a tax. This addition to tax applies only to the extent of any income tax underpayment which is attributable to such an overstatement, and only if the taxpayer is an individual, a closely held corporation, or a personal service corporation. For example, assume that an individual understates income tax liability for the taxable year by $5,000, and that of the $5,000 underpayment, $2,000 is attributable to overstating the value of property. In this case, only the portion of the tax underpayment that is attributable to overstating the value of the property (i.e., $2,000) is subject to the penalty.

The portion of a tax underpayment that is attributable to a valuation overstatement will be determined after taking into account any other proper adjustments to tax liability. Thus, the underpayment resulting from a valuation overstatement will be determined by comparing the taxpayer's (1) actual tax liability (i.e., the tax liability that results from a proper valuation and which takes into account any other proper adjustments) with (2) actual tax liability as reduced by taking into account the valuation overstatement. The difference between these two amounts will be the underpayment that is attributable to the valuation overstatement.[2]

[2]The determination of the portion of a tax underpayment that is attributable to a valuation overstatement may be illustrated by the following example. Assume that in 1982 an individual files a joint return showing taxable income of $40,000 and tax liability of $9,195. Assume, further, that a $30,000 deduction which was claimed by the taxpayer as the result of a valuation overstatement is adjusted down to $10,000, and that another deduction of $20,000 is disallowed totally for reasons apart from the valuation overstatement. These adjustments result in correct taxable income of $80,000 and correct tax liability of $27,505. Accordingly, the underpayment due to the valuation overstatement is the difference between the tax on $80,000 ($27,505) and the tax on $60,000 ($17,505) (i.e., actual tax liability reduced by taking into account the deductions disallowed because of the valuation overstatement), or $9,800.

[Staff of the Joint Committee on Taxation, General Explanation of the Economic Recovery Tax Act of 1981, at 333 (J. Comm. Print 1981). Fn. ref. omitted.]

As discussed further below, under the above formula, there is no underpayment attributable to the valuation overstatement in this case.

has relied on such a Blue Book in its analysis of another tax statute. See *FPC v. Memphis Light, Gas & Water Div.*, 411 U.S. 458, 471-472 (1973).

The relationship of section 6659 to other legislation in recent years cannot be overlooked. In 1984, Congress enacted section 6621(d), now section 6621(c), providing for additional interest on underpayments attributable to tax-motivated transactions, including underpayments attributable to any valuation overstatement (within the meaning of section 6659(c)). Thus, when we determine that an underpayment is attributable to a valuation overstatement under section 6659(c), in cases where claim for additional interest is made, we are also determining the portion of an underpayment that is subject to additional interest under section 6621(c).[3] The interrelationship between section 6659 and section 6621(c) was described in the committee report as follows:

> The conferees note that a number of the provisions of recent legislation have been designed, in whole or in part, to deal with the Tax Court backlog. Examples of these provisions are the increased damages assessable for instituting or maintaining Tax Court proceedings primarily for delay or that are frivolous or groundless (sec. 6673), the adjustment of interest rates [sec. 6621(c)], the valuation overstatement and substantial understatement penalties (secs. 6659 and 6661) * * *
>
> The conferees believe that, with this amendment, the Congress has given the Tax Court sufficient tools to manage its docket, and that the responsibility for effectively managing that docket and reducing the backlog now lies with the Tax Court. * * * The Court should * * * assert, without hesitancy in appropriate instances, the penalties that the Congress has provided.
>
> [H. Rept. 98-861 (Conf.) (1984), 1984-3 C.B. (Vol. 2) 239.]

In temporary regulations adopted under section 6621(c), the Commissioner has set forth the manner of computation of an underpayment attributable to a tax-motivated transaction, such as a valuation overstatement. The computation is essentially the same as that found in the Committee Explanation of section 6659 quoted above. At section 301.6621-2T, A-5, Proced. & Admin. Regs. (Temporary), 49 Fed. Reg. 59394 (Dec. 28, 1984), respondent has indicated how the amount of an underpayment attributable to a tax-motivated transaction is to be determined as follows:

---

[3]That additional interest, however, applies only after Dec. 31, 1984. *Solowiejczyk v. Commissioner,* 85 T.C. 552 (1985), affd. per curiam without published opinion 795 F.2d 1005 (2d Cir. 1986).

A-5 (1) Calculate the amount of the tax liability for the taxable year as if all items of income, gain, loss, deduction, or credit, had been reported properly on the income tax return of the taxpayer ("total tax liability"); and

(2) Without taking into account any adjustments to items of income, gain, loss, deduction, or credit that are attributable to tax motivated transactions (as defined in A-2 through A-4 of this section), calculate the amount of the tax liability for the taxable year as if all other items of income, gain, loss, deduction, or credit had been reported properly on the income tax return of taxpayer ("tax liability without regard to the tax motivated transactions").

(3) The difference between the total tax liability and the tax liability without regard to tax motivated transactions is the amount of the tax motivated underpayment.

It indeed would be anomalous if the amount of an underpayment attributable to a valuation overstatement were calculated in the above manner for purposes of section 6621 and in some other manner for purposes of section 6659. We therefore examine the result reached under the above regulation.

Under the first step (1), we calculate the amount of tax liability for each year as if all items had been reported properly, i.e., as if petitioners had not claimed any investment tax credit or depreciation for the container that had not been placed in service during the years in issue. Next (2), without taking into account any adjustments that are attributable to the valuation overstatement, we calculate the amount of tax liability as if all other items had been reported properly. Finally (3) because there is no difference between the amounts calculated under steps (1) and (2), no part of the underpayment is attributable to the valuation overstatement.

We do not agree with respondent that this result is not logical or equitable. The consequence of determining that an asset was not placed in service during the years in issue is to disallow all deductions and investment tax credit relating to that asset. In many cases, presumably including this one, such deductions and credit will be allowable in a later year. To the extent that deductions in a later year are based on a valuation overstatement, they will be subject to the additions to tax under section 6659. On the other hand, to the extent that a determination, such as our opinion in *Noonan*, allows the taxpayer to avoid a valuation overstatement in a

later year, the deterrent purpose of the additions to tax has been served. Moreover, if a taxpayer were to concede that an asset was not placed in service and that no deductions or credits are allowable in order to avoid an addition to tax, could that concession reasonably be refused?

Respondent's approach would have an adverse affect on our ability to manage cases and to reduce our inventory by requiring us to determine issues otherwise unnecessary to our decision in many cases. In *Noonan,* we determined the correct basis of the containers only because taxpayers other than the Todds had placed their containers in service during the years in issue. We determined the fair market value of the containers only as an upper limit to basis because we concluded that "On the record before us, it is likely that any cash payments in excess of fair market value of the containers are nondeductible payments for the anticipated substantial tax benefits projected in the offering memorandum." 52 T.C.M. 534, at 549, 55 P-H Memo T.C. par. 86-449, at 2078.

In *Law v. Commissioner,* 84 T.C. 985, 993 (1985), on appeal (9th Cir., Dec. 29, 1986), we anticipated the problem involved here as follows:

As in so many shelter cases, the Commissioner here has asserted numerous, alternative grounds for the disallowance of all or portions of the partnership's losses. Not all of these grounds are listed as "tax motivated transactions." For example, the Commissioner's principal position with respect to the film depreciation deductions is that the partnership did not acquire a depreciable interest in the film. If we were to find that the partnership did not in fact acquire a depreciable interest in the film, we would not have to decide whether the film was overvalued in order to determine that the partnership was not entitled to a depreciation deduction. The Commissioner also contends that, if the partnership acquired a depreciable interest in the film, the amount of a promissory note given to purchase the film must be excluded from the film's basis because the debt was too contingent. If we were to disallow a portion of the partnership's depreciation deductions on this ground, we likewise might not have to determine whether the film was overvalued. See, e.g., *Estate of Baron v. Commissioner,* 83 T.C. 542, 549 (1984), * * * [affd. 798 F.2d 65 (2d Cir. 1985)]. Similarly, in other movie shelter cases, we have disallowed depreciation deductions without reaching the valuation issue where the partnership involved had misapplied the income forecast method of depreciation. See, e.g., *Greene v. Commissioner,* 81 T.C. 132 (1983); *Wildman v. Commissioner,* 78 T.C. 943 (1982). In cases involving alternative grounds, the Commissioner may contend

that section 6621(d) requires us to decide issues which we might otherwise avoid, in order that the additional interest may be collected. On the other hand, the petitioner might maintain that, if no difference in the amount of the deficiency would result, we must decide the case on a ground, if available, which is not a "tax motivated transaction" for purposes of section 6621(d). Furthermore, if we were to decide that there is a deficiency on several alternative or overlapping grounds, some of which are listed as "tax motivated transactions" and some of which are not, the parties may dispute whether all, a part, or none of such underpayment is "attributable to" the "tax motivated transactions."

The issue decided in *Law* was whether respondent should be allowed to amend his answer to claim additional interest under section 6621 after a case had been tried and briefed. That, of course, is not the issue here. Language from a concurring opinion in *Law,* however, is pertinent:

Moreover, although section 6621(d) clearly is intended to be applied to interest accruing after December 31, 1984, the conferees also intended this provision to assist this Court in "managing" our docket and "reducing" our backlog. While we were admonished "to assert, without hesitancy in appropriate instances, the penalties" provided us, including section 6621(d), it is obvious that reopening the record in a submitted case for evidence or briefing so as to permit retroactive application of this statute to these petitioners hinders management of our docket and reduction of our backlog. Neither is there any reason to believe that such application of the statute would have any proper "in terrorem" effect on these or other taxpayers. It might be apprehended as simply abusive. In the absence of clearer direction from Congress, this is simply not an "appropriate" case for the application of section 6621(d). Both justice and judicial economy, not the presence or absence of significant legal issues, require the denial of leave to amend. * * * [84 T.C. at 995-996.]

In appropriate circumstances, we have applied section 6659 without hesitation. See, e.g., *Johnson v. Commissioner,* 85 T.C. 469, 483 (1985). We do not believe, however, that we should be precluded from deciding a case on one issue that leads to disallowance of all deductions and credits merely because deciding another issue would bring into play an addition to tax. Such a requirement would prolong and multiply litigation, is contrary to sound judicial administration, and appears contrary to congressional intent to reduce our case load.

We are also not persuaded by respondent's suggestion that petitioners Todd are more culpable than the other taxpayers because their situation "suffers from greater

infirmities." The evidence described in *Noonan* was that the failure to place the containers in service during the years of purchase was due to circumstances beyond the control of the Todds and may not have been known to the Todds. FoodSource had represented that the containers were in service and earning rents. Although the issue was determined against them in *Noonan,* the Todds presented a tenable argument that the containers actually were placed in service during the years of purchase, notwithstanding the failure of Budd to make delivery. We do not agree with respondent, therefore, that failure to apply the addition to tax to the underpayments of petitioners Todd would produce incongruous results.

In cases decided under sections 6659 and/or 6621, we have carefully segregated the underpayments attributable to a valuation overstatement from underpayments that are not so attributable. For example, in *Zirker v. Commissioner,* 87 T.C. 970, 980-981 (1986), we stated:

> Since the only valuation overstatement in this case is based on our finding that the correct adjusted basis in the property was zero, rather than $41,500 as claimed on the return, which finding resulted from our conclusion that no sale occurred, it follows that the valuation overstatement is not an ingredient of, but rather the result of the finding that no sale occurred. Accordingly, the remaining disallowed deductions (creating an underpayment) which result from the finding that no sale occurred are not attributable to a valuation overstatement.

See *Rose v. Commissioner,* 88 T.C. 386, 426-427 (1987); *Harmon v. Commissioner,* T.C. Memo. 1986-305; *DeMartino v. Commissioner,* T.C. Memo. 1986-263; *Forseth v. Commissioner,* T.C. Memo. 1985-279. After our decisions in *DeMartino* and *Forseth,* Congress amended section 6621 to eliminate a perceived anomalous situation with respect to transactions that are "sham or fraudulent." Section 1535 of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, 2750, amended section 6621(d) (redesignated as section 6621(c) by the act) to include in the list of tax-motivated transaction "(v) any sham or fraudulent transaction." The FoodSource program does not fit that category.

Congress is, of course, similarly free to change the result in cases such as this by imposing additions to tax or additional interest on underpayments attributable to trans-

actions "accompanied by a valuation overstatement." If Congress were to take such action, we would be required to determine issues solely for the purpose of imposing such sanctions in addition to disallowing deductions and credits.

In conclusion, we believe that careful reading of the statutory language, as well as considerations of consistency and judicial economy, preclude application of section 6659 in this case.

> *Decision will be entered for the deficiencies only.*