JOSEPH M. IROM, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Irom v. Commissioner
Docket No. 39238-86.
United States Tax Court
T.C. Memo 1988-211; 1988 Tax Ct. Memo LEXIS 239; 55 T.C.M. (CCH) 842; T.C.M. (RIA) 88211; May 12, 1988; As amended May 17, 1988; Vacated and Remanded January 20, 1989 *239 P, a sublessee in coal mining property, agreed to pay S (sublessor) a minimum annual royalty, payable out of the proceeds of coal production. The royalties for the first two years of the sublease were payable part in cash and part by recourse promissory notes. Royalties for the remaining years of the sublease were payable by nonrecourse promissory notes. All promissory notes were due December 31, 1998. Upon default in payment of any royalties, S could, at his option, declare all notes due and payable, or terminate the sublease. On his 1980 Federal income tax return, P claimed a loss in the amount of the minimum royalty purportedly paid to S during 1980. R determined that P was not entitled to the claimed loss. R further determined that additional interest was due under section 6621(c). Held, P is not entitled to a deduction for advanced minimum royalty payments under section 1.612-3(b)(3), Income Tax Regs., because his liability for payments is contingent, and he bears no real risk of loss. Held further, P is not liable for additional interest under section 6621(c). Held further, R's Motion for Summary Judgment is granted in part and denied in part, and P's Cross Motion for *240 Partial Summary Judgment is granted. Bryan G. Skarlatos and Jules Ritholz, for the petitioner. Francis J. Strapp, Jr. and Terry Vincent, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Chief Judge: This case was assigned to Special Trial Judge Peter J. Panuthos for the purpose of hearing, consideration, and ruling on respondent's Motion for Summary Judgment and petitioner's Cross Motion for Partial Summary Judgment, filed herein. [1] After a review of the record, we agree with and adopt his opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE PANUTHOS, Special Trial Judge: Respondent, by notice dated July 10, 1986, determined a deficiency in petitioner's Federal income tax in the amount of $ 80,403 for the taxable year 1980. Respondent further determined that additional interest was due under section 6621(c) (formerly *241 section 6621(d)) in that there is a substantial underpayment attributable to a tax motivated transaction. A timely petition was filed on October 2, 1986. [2] This case is before the Court on respondent's Motion for Summary Judgment and petitioner's Cross Motion for Partial Summary Judgment. Respondent has moved for summary adjudication in his favor on the issues of whether petitioner may deduct alleged advance minimum royalty payments for the taxable year 1980, and whether petitioner is liable for additional interest under section 6621(c). [3] Petitioner has moved for partial summary adjudication in his favor solely on the issue of whether he is liable for additional interest under section 6621(c). On December 17, 1979, petitioner entered into a sublease agreement with Mustan Associates (Mustan), whereby petitioner obtained an individed interest in coal mining rights and privileges as a participant *242 in the Grand Coal Venture (GCV), a general partnership. [4] The sublease was for a term of eight years, renewable from year to year, at petitioner's option, as long as coal was being produced. Petitioner, as sublessee, agreed to pay an annual royalty for each year of the sublease in the amount of $ 162,500 for his interest in mining rights in GCV. Pursuant to the terms of the sublease, petitioner agreed to pay the royalty for the first year (1979), $ 25,000 in cash and $ 137,500 by recourse promissory note due December 31, 1998. For the remaining years of the sublease, petitioner was required to pay the minimum royalty for each year ($ 162,500) by nonrecourse promissory note. By agreement, dated January 25, 1980, the sublease was amended to require that the minimum annual royalty for 1980, the second year, be paid $ 20,000 in cash and $ 142,500 by recourse, *243 rather than nonrecourse, promissory note. All other terms of the sublease remained in "full force and effect." The sublease provided that all the promissory notes would be due on December 31, 1998, payable monthly at a fixed rate per ton of coal actually mined and sold. The agreement further provided that if such "tonnage" royalties were insufficient to fulfill one year's advance minimum royalty, then that year's payment was to be deferred until it could be recouped from future tonnage royalties. These notes were to be secured by petitioner's interest in GCV. It is undisputed that no coal was mined or sold by GCV in 1980. Paragraph Five of the sublease agreement provided in part as follows: 5. In the event that the Sublessee shall fail to pay the royalties herein reserved as and when due and payable * * * then the Sublessor may, at its option, declare all or any of the Minimum Annual Royalty Note due and payable and it or they shall thereby become and be immediately due and payable and/ or terminate the First Sublease[5] by written notice given in the manner herein provided. Upon such termination, all the rights and privileges of the Sublessee hereunder shall cease and determine *244 and the Sublessor shall be entitled to resume its former estate and the Sublessee shall surrender its Percentage Interest in and possession of the leased premises and every part thereof upon demand and in the event that the Sublessee fails to surrender possession, Sublessor may expel Sublessee and those claiming under it * * *. [Emphasis added.] Petitioner elected to use the accrual method of accounting for reporting taxable income and loss. Petitioner reported a loss from GCV on his 1980 Federal income tax return in the amount of $ 162,500, representing his deduction for the advanced minimum royalty purportedly paid to Mustan under the sublease agreement. Rule 121(b) provides that a decision may be rendered upon Motion for Summary Judgment if it is shown "that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." The Rule further provides that "partial summary adjudication may *245 be made which does not dispose of all the issues in the case." The factual materials presented and the inferences to be drawn from such materials "must be viewed in the light most favorable to the party opposing the motion." Jacklin v. Commissioner,79 T.C. 340, 344 (1982). The rules for deductibility of advanced royalties are contained in section 1.612-3(b)(3), Income Tax Regs. The general rule is that advanced royalties are deductible only in the year that the mineral product is sold. However, a current deduction is allowed in the case of advanced royalties paid or accrued "as a result of a minimum royalty provision." It is this language on which petitioner relied in claiming his deduction for 1980. The regulations further state that: a minimum royalty provision requires that a substantially uniform amount of royalties be paid at least annually either over the life of the lease or for a period of at least 20 years, in the absence of mineral production requiring payment of aggregate royalties in a greater amount. [Emphasis added.] Petitioner claims that the sublease agreement requires him to pay a substantially uniform amount ($ 162,500 per year for a period not to exceed 20 years) *246 over the life of the lease, and that, therefore, the payments made were minimum royalties and fully deductible in 1980. Respondent, on the other hand, argues that the sublease agreement does not require a uniform, annual payment since, by the terms of the note, payment on all interest and principal is not due, if at all, until December 31, 1998. This Court, addressing similar facts in Wing v. Commissioner,81 T.C. 17 (1983), held that the Court "must look to the agreement as a whole, along with any pertinent additional information, to determine if the requirements for establishing a minimum royalty provision have been met." Wing v. Commissioner, supra at 39. Accordingly, one sentence declaring that a uniform, annual minimum amount be paid over the life of the lease may be "contradicted or undone" by subsequent language. Wing v. Commissioner, supra.See also Vastola v. Commissioner,84 T.C. 969, 974-975 (1985). [6]
Here the majority of petitioner's payments are to consist of nonrecourse notes payable in monthly amounts per ton of coal mined and sold; however, any balance not so *247 paid is deferrable until December 31, 1998. In Maddrix v. Commissioner,83 T.C. 613, 623 (1984), affd. 780 F.2d 946 (11th Cir. 1986), this Court ruled: Petitioner's execution of a nonrecourse note, payments on which were contingent on coal sales proceeds, does not establish an enforceable requirement that substantially uniform minimum royalties be paid annually in any event, regardless of annual production. The contingent nature of the note is inherently inconsistent with the regulatory definition of a minimum royalty provision. * * *
Thus, it is clear that here, as in Wing, Vastola, and Maddrix, "the substance of the entire transaction undoes what appears at first glance to be a uniform annual requirement." Petitioner has agreed to pay annual royalties, however, payments are not required to be made monthly or even annually, but are in fact due, if at all, in 1998. Petitioner argues that payments on his nonrecourse notes are, nevertheless, not solely contingent on coal sales proceeds, as in Vastola, since the notes here are also secured by petitioner's interest in GCV, including his interest in equipment and accounts receivables relating to GCV. Petitioner claims that to the extent *248 this security had value he is entitled to a deduction for the advance minimum royalty paid. [7] This argument was recently raised in Brown v. Commissioner,799 F.2d 27 (2d Cir. 1986), affg. T.C. Memo. 1985-564. [8] In Brown, the Court of Appeals, in examining a situation substantially similar to the present case, found "no material distinction" between Vastola and the case before it, deciding that the "clear effect" of the agreement as a whole is to make the obligations contingent upon coal sales. In Brown, the Court laid down a test to determine the deductibility of the obligation. "It is not enough simply to say that because the note is non-recourse, any yearly payment *249 is not required. Rather, the inquiry should be whether the failure to make a specified annual payment can result in the loss of all lease rights within the one year period." Brown v. Commissioner, supra at 30. See also Howe v. Commissioner,814 F.2d 98 (2d Cir. 1987), affg. a Memorandum Opinion of this Court. In both Brown and Howe, the Court held that the provisions of the sublease governed the taxpayer's obligation to make payments on the non-recourse notes. Since in each case the sublease provided that there was no "event of default" within the one year period, the substance of the agreement was to allow the taxpayers "to withhold their payments without penalty of forfeiture for over a year" ( Howe v. Commissioner, supra at 101) thereby failing the Brown test of deductibility. In the present case, the sublease provides for default on the notes only when they become "due and payable," which, by the terms of the agreement is not until December 31, 1998. Petitioner could thus withhold payments and yet escape the "penalty of forfeiture" for more than a year. Furthermore, as in Brown, upon an event of default, whether a loss will result is subject to the sublessor's discretion, *250 since, as noted above, paragraph 5 of the sublease allows the sublessor to merely terminate the lease, cutting off petitioner's rights and requiring him to surrender the premises instead of demanding payment on the notes. [9] It is clear from Wing, that the mere possibility of loss at some future date cannot satisfy the provisions of section 1.612-3(b)(3), Income Tax Regs., requiring uniform annual payments. "Similarly, a possibility of the loss of mineral reserves is insufficient to satisfy the 'required' payment provision of the [Regulation]." Brown v. Commissioner, supra at 31. Petitioner's further contention that section 1.612-3(b)(3), Income Tax Regs., requires the interpretation that a minimum royalty provision can be satisfied by "accrued" royalties in order that the "paid or accrued" language is not rendered "mere surplusage" must also be rejected. This point was raised in Vastola, *251 and while the Court did not fully address the issue, it held that a contingent liability does not meet the "all events" test for accrual and deductibility required by section 1.461-1(a)(2), Income Tax Regs., and thus the taxpayers could not properly accrue her "minimum royalties." Vastola v. Commissioner, supra at 977. Since, as noted above, petitioner's liability for payments is wholly contingent and bears no real risk of loss, petitioner may not properly accrue the royalty payments. Accordingly, the payments involved were not paid in satisfaction of a minimum royalty provision and, thus, petitioner may not claim a deduction for advanced royalties for the taxable year 1980. Respondent determined that petitioner is liable for additional interest under section 6621(c). That section provides for an increased rate of interest "with respect to any substantial underpayment attributable to tax motivated transactions * * *." A substantial underpayment is defined as an underpayment which exceeds $ 1,000. A tax motivated transaction includes "any loss disallowed by reason of section 465(a) * * *." [Text deleted by Court Emendation]. Respondent argues that the underpayment is attributable *252 to a tax motivated transaction because the deduction could be disallowed pursuant to section 465. Respondent appears to make this argument solely for the purpose of applying the increased rate of interest under section 6621(c). In his case in chief, respondent's only ground for disallowance of the deduction was that the payment in 1980 was not an advanced minimum royalty payment within the meaning of section 1.612-3(b)(3), Income Tax Regs. we have found in favor of respondent with respect to this determination. However, we did not decide whether the deduction was disallowable under section 465 (a basis for determination of the deficiency which respondent did not argue). Accordingly, since no other grounds for application of section 6621(c) have been asserted, we conclude that petitioner is not liable for such addition. See Todd v. Commissioner,89 T.C. 912 (1987), on appeal (5th Cir. 1988). For the reasons set forth herein, respondent's Motion for Summary Judgment will be granted in part and denied in part. Petitioner's Motion for Partial Summary Judgment will be granted. An appropriate order will be entered.
Footnotes
1. This case was heard pursuant to section 7456 (redesignated as section 7443A by the Tax Reform Act of 1986, Pub. L. 99-514, section 1556, 100 Stat. 2755) and Rule 180. All section references are to the Internal Revenue Code of 1954, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. At the time of filing the petition herein petitioner resided at New York, New York. ↩
3. While the deduction at issue is claimed mining expenses in the amount of $ 162,500, respondent further disallowed $ 4,334 in medical expenses due to the increase in petitioner's adjusted gross income. ↩
4. This case involves the same general partnership, Grand Coal Venture, as that in Poster v. Commissioner,T.C. Memo. 1988-57. In Poster,↩ this Court held that the taxpayer was not entitled to a deduction for advanced minimum royalties since there was no showing that the taxpayer was obligated to make substantially uniform payments. 5. The reference to a "First Sublease" in paragraph five of the agreement appears to conflict with the document itself which is known as the "Second Sublease." We do not believe that this discrepancy is relevant or material to the questions here presented. ↩
6. Vastola v. Commissioner,84 T.C. 969↩ (1985) involved the same general partnership, Grand Coal Venture. 7. Petitioner unsuccessfully attempts to distinguish this case from Vastola v. Commissioner,84 T.C. 969 (1985) where, as here, the security interest was not merely in the coal underlying the property, but also in petitioner's interest in other coal venture property. We held in Vastola, that the value of the security interest was "irrevelant to the determination of the applicability of [section 1.612-3(b)(3), Income Tax Regs.]" Vastola v. Commissioner, supra↩ at 973. 8. See also Goldstone v. Commissioner,T.C. Memo. 1986-481↩. 9. Section 1.612-3(b)(2), Income Tax Regs.↩, states that, upon termination of a right to extract minerals, any deduction taken for an advanced royalty on mineral units not extracted must be returned as income. The termination thus erases the loss previously recorded and wipes out the prior obligation.