LINDA N. BORRELL, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Borrell v. Commissioner
Docket No. 17557-87.
United States Tax Court
T.C. Memo 1989-251; 1989 Tax Ct. Memo LEXIS 251; 57 T.C.M. (CCH) 502; T.C.M. (RIA) 89251; May 24, 1989. *251 Held: Petitioner is not entitled to deductions for partnership losses with respect to an Arizona gold mining venture. Held further: petitioner's liability for additions to tax and increased interest determined. Bryce A. Baggett, for the petitioner. Bruce K. Meneely, for the respondent. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: By statutory notice dated March 10, 1987, respondent determined deficiencies in, and additions to, petitioner's Federal income taxes for the years and in the amounts as follows: Additions to Tax
Year
Section
Section
Section
Ended
Deficiency
6653(a)(1) [1]
6653(a)(2)
6661(a)
1982
$ 6,509
325 *
$ 1,627
1983
7,662
390 *
1,916
1984
5,842
292 *
1,461 Respondent also determined that petitioner was liable for increased interest pursuant to section 6621(c) of the Internal Revenue Code of 1986. The sole issue, aside from petitioner's liability for the additions to tax and increased interest, is *252 petitioner's entitlement to deductions for mine exploration expenditures pursuant to section 617 with respect to an Arizona gold mining venture, Senator Cash Mines. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts, supplemental stipulation of facts, and attached exhibits are incorporated herein by this reference. At the time she filed her petition, petitioner was a resident of Oklahoma City, Oklahoma. Petitioner made her first investment in Senator Cash Mines (Senator Cash) in 1981. She made her investment after meeting John Bruer (Bruer) in Dallas, Texas, where petitioner resided at that time. After receiving her initial investment, Bruer provided petitioner with several documents, including a mining lease, assignment of that lease to Bruer, and several reports of mining engineers with respect to the property to be mined, which was located near Prescott, Arizona. These documents were provided to petitioner to assure her of the safety of her investment. She was also set at ease about her investment because of her social contacts with Bruer and his family. Petitioner never visited the mining site, but had been shown pictures *253 of it by Bruer. She had also read about the mine in an article in Arizona Highway magazine which contained a map showing Senator Cash's location. During the years before the Court, petitioner transferred funds with respect to her investment by sending checks, money orders, and wire transfers to persons or entities designated by Bruer. Some of these transfers of funds were to Bruer or other individuals connected in some fashion to the mining venture, while other transfers were made payable to Senator Cash or Golden Eagle Mines. [2] Petitioner transferred $ 8,400 during 1982, $ 6,755 in 1983, and $ 7,099 in 1984. Petitioner was under the impression that it made little difference to whom the transfers were made payable, as all funds were to cover Senator Cash's mining exploration expenses. On December 1, 1983, petitioner signed a promissory note in the amount of $ 25,000 payable to Senator Cash and due on December 1, 1990. [3] Petitioner has never been called upon to pay interest or principal on this or any other promissory note she signed, but had been told by Bruer that the notes would *254 be satisfied by income produced by the mine. Bruer also told petitioner that he had discounted the notes with the bank, which would call upon her for payment. Petitioner did not know exactly who the other partners in Senator Cash were, or even how many there were. She knew that Bruer's three daughters were partners, as well as a hospital administrator in Austin. [4] Bruer told petitioner that her interest in Senator Cash was 25 percent. Petitioner was not provided with Forms K-1; however, for each of the years in issue, Bruer provided petitioner with a letter which stated how much of her investment petitioner could deduct in each of those years. These letters were attached to her returns for 1982 and 1983. [5] *255 Petitioner claimed her partnership losses on Schedule A for 1982 and on Schedule C for 1983 and 1984. In early 1984, petitioner was introduced to John E. Patterson, Jr. (Patterson), an attorney and C.P.A. Petitioner and Patterson were introduced through the latter's law partner, who had business dealings with Bruer with respect to Senator Cash. Patterson was employed by petitioner to prepare her tax returns for 1983 and 1984. [6] In preparing those returns, Patterson had only the information supplied by petitioner upon which to rely. Patterson told petitioner that her 1982 deductions with respect to Senator Cash were improperly included as itemized deductions on her Schedule A for that year. [7] In order to prepare petitioner's 1984 return, Patterson sought a Form K-1 from Bruer. Patterson also asked for Senator Cash's original partnership returns, but Bruer had never secured *256 the preparation of such returns, explaining that Senator Cash did not turn a profit for the years in issue. [8] Patterson informed Bruer that such returns were necessary to support deductions for partnership losses claimed by petitioner. Bruer asked Patterson to prepare these tax returns, which Patterson prepared based upon information provided primarily over the telephone by Bruer. Patterson declined to sign the returns as paid preparer, as he did not completely fill out the returns [9] and did not wish to be seen as a representative of Senator Cash. Upon their completion, Patterson sent the returns back to Bruer in Dallas. Senator Cash's return for 1982 was filed on July 16, 1986; its returns for 1983 and 1984 were filed July 21, 1986. OPINION Respondent disallowed petitioner's deductions *257 on several grounds. Respondent first argues that petitioner has not proven that Senator Cash was a bona fide partnership. If it was, respondent argues that petitioner has not shown that Senator Cash incurred any deductible expenses or was engaged in any profit- motivated activity. Respondent also argues that petitioner has not established that she had an interest in Senator Cash, her basis in any interest that she did have, or her amount at risk under section 465. We find that petitioner has not shown that Senator Cash made any deductible expenditures during the years in issue, and sustain respondent's determination. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). The documentary evidence before the Court is sketchy and incomplete. For instance, we have not been provided with a copy of Senator Cash's partnership agreement. Petitioner has not produced copies of promissory notes which she allegedly signed, nor is there any substantiation of Senator Cash's mining exploration expenses. Petitioner seeks to corroborate the evidence before the Court with her own testimony and that of Patterson. [10] In many instances, petitioner's testimony with respect to her understanding of what *258 was being done with the funds she transferred pursuant to Bruer's directions stands alone as support for her claimed deductions. Petitioner has shown actual payments with respect to Senator Cash in the amount of $ 8,400 in 1982, $ 6,755 in 1983, and $ 7,099 in 1984.[11] *259 Petitioner included the amount of these transfers, plus promissory notes which she allegedly executed during each of the years in issue, in her partnership basis. However, the mere signing of a promissory note, without more, does not entitle petitioner to include the face amount of the note in her basis. Petitioner incurred no cost in making the note, and her basis in it was zero. Her basis in the note would only be increased when payments on it were made. See Alderman v. Commissioner,55 T.C. 662 (1971); Oden v. Commissioner,T.C. Memo. 1981-184. Since the face amount of the notes would not be includable in her partnership basis in any event, we need not make a finding with respect to whether she actually executed and became liable on such notes. Any deduction to which petitioner is entitled is therefore limited to the amounts which she has proven she has invested. However, it is not enough for petitioner to prove that she transferred funds to Senator Cash. She must also prove that Senator Cash had deductible expenses. Here, "We have been given no evidence to show specific items of expenses, to establish recipients of such claimed expenses, or to show that, if there were such expenditures, they were for deductible items." Terrell v. Commissioner,T.C. Memo. 1981-527, 42 T.C.M. 1132, 1135, 50 P-H Memo T.C. par. 81,527, 81-2028, 81-2031. Petitioner argues that Senator Cash's expenditures are substantiated on its Form 1065, and that her distributive share of those expenses are shown on her Form K-1. However, to hold that representations on a return or similar document constitute proof of a taxpayer's entitlement to those items would be to negate the presumption of correctness attendant upon respondent's statutory notice of deficiency. Halle v. Commissioner,7 T.C. 245 (1946), *260 affd. 175 F.2d 500 (2d Cir. 1949). Because there is no substantiation of these expenses, we sustain respondent's determination with respect to the deficiencies. Respondent has determined that petitioner is liable for additions to tax for negligence pursuant to section 6653(a)(1) and (2). Negligence for purposes of section 6653(a) is the "lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances." Marcello v. Commissioner,380 F.2d 499, 506 (5th Cir. 1967). Reliance upon the advice of experts is a defense to an addition to tax for negligence, Jackson v. Commissioner,86 T.C. 492, 539 (1986), affd. 864 F.2d 1521 (10th Cir. 1989), even where the advice is erroneous. Brown v. Commissioner,47 T.C. 399, 410 (1967), affd. 398 F.2d 832 (6th Cir. 1968). However, such reliance "must extend beyond the subject matter of the advice, [and] the taxpayer seeking to utilize the defense must also show that his reliance upon the purported expert's ability is reasonable." Bilyeu v. Commissioner,T.C. Memo. 1988-209, 55 T.C.M. 836, 838, 57 P-H Memo T.C. par. 88,209, 88-1073, 88-1075. This is not a case, such as Bilyeu, where the taxpayer relied *261 exclusively upon a promoter of an investment whose only connection with the taxpayer was the investment itself. While petitioner relied primarily upon Bruer in making her investments, her trust in him was nurtured through their social activities together. Petitioner became acquainted with Bruer's family, and while she was unsure of the precise number and identity of Senator Cash's other partners, she knew that Bruer's daughters were among them. We think that it was reasonable for petitioner to believe that Bruer would provide his daughters with sound investment advice, and that she was not negligent in relying upon him with respect to the same investment in which he had enlisted his daughters. We therefore find on this record that petitioner is not liable for additions to tax for negligence. Respondent also determined that petitioner was liable for an addition to tax pursuant to section 6661. That section provides for a 25-percent addition to income tax in the case of an "understatement," as defined in section 6661(b)(2), which exceeds the greater of 10 percent of the tax required to be shown on the return or $ 5,000. Sec. 6661(b)(1). The addition may be reduced if the tax treatment *262 of an item giving rise to such an understatement is supported by substantial authority, or the relevant facts are adequately disclosed with respect to such an item. Sec. 6661(b)(2)(B)(i) and (ii). Petitioner has provided us with no substantial authority for her deductions; on brief she states only that her deductions are proper, and that there is no deficiency to which to apply section 6661. We do not view the letters from Bruer, which petitioner attached to two of her returns, as constituting adequate disclosure as contemplated in section 6661(b)(2)(B)(ii). Since the understatement in petitioner's Federal income taxes for each of the years before us exceeds the amounts set forth in section 6661(b)(1), we find for respondent on this issue. Finally, respondent has determined that petitioner is liable for increased interest pursuant to section 6621(c) of the Internal Revenue Code of 1986. That section provides for interest on any underpayment at the rate of 120 percent of the underpayment rate. The increased rate of interest applies to "any substantial underpayment attributable to tax motivated transactions." Sec. 6621(c)(1). These tax-motivated transactions are defined by statute *263 in section 6621(c)(3)(A) and by regulations in section 301.6621-2T, Q&A 2, 3 and 4, Temp. Proced. & Admin. Regs., 49 Fed. Reg. 59394 (Dec. 28, 1984). Respondent has made several arguments on brief which, if sustained, would subject petitioner to increased interest. We have held in a case involving a similar statute that only when deductions are disallowed for the reasons specified in the statute is the increased interest or addition to tax appropriate. Todd v. Commissioner,89 T.C. 912 (1987), affd. 862 F.2d 540 (5th Cir. 1988) (section 6659 addition to tax for valuation overstatement inapplicable when deductions denied because property not placed in service during years in issue). Citing the legislative history underlying section 6621(c) we noted the anomalous result that would arise from calculating underpayments for section 6621(c) purposes differently from underpayments for purposes of section 6659. Todd v. Commissioner,89 T.C. at 918. The burden of proof with respect to section 6621(c) remains upon petitioner when respondent determines in the notice of deficiency that increased interest is appropriate. Rybak v. Commissioner,91 T.C. 524, 567 (1988). As petitioner has not *264 carried her burden of proof on the merits, we have no basis for concluding that petitioner's deductions could have been disallowed for any reason outside of section 6621(c) or on any grounds which were not an integral part of or inseparable from any of the bases for a tax-motivated underpayment found in section 6621(c). McCrary v. Commissioner, 92 T.C.     (filed April 17, 1989), slip op. at 47. We therefore find that petitioner has not carried her burden of proof with respect to section 6621(c), and increased interest is appropriate. Because of our conclusion with respect to the addition to tax for negligence, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise noted, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue. All rule references are to the Tax Court Rules of Practice and Procedure. * 50 percent of the interest due on the entire deficiency↩
2. The record is unclear as to the precise relationship of Golden Eagle Mines to Senator Cash or Bruer.↩
3. The copy of that note made a part of the record was unexecuted by petitioner. Petitioner testified that she signed two or three other such notes, but they were not made part of the record.↩
4. Senator Cash's Forms 1065, filed in July 1986 confirm that Senator Cash had five partners. ↩
5. While petitioner's testimony indicates that she received such a statement for 1984, it was not attached to her 1984 tax return.
6. Petitioner prepared her own tax return for 1982. ↩
7. Patterson subsequently prepared and filed for petitioner amended returns for each of the years before the Court. These returns have not been made part of the record. The only purpose for the amended returns was to correct the erroneous inclusion of partnership losses on Schedule A for 1982 and on Schedule C for 1983 and 1984.↩
8. Neither did Patterson receive a copy of Senator Cash's partnership agreement, which he requested of Bruer. ↩
9. atterson had not been furnished with Senator Cash's employer identification number, and informed Bruer that its inclusion in the returns was necessary. Neither did Patterson complete the balance sheet on those forms, as he had not been provided sufficient information with which to do so.↩
10. Bruer was to be a witness for petitioner, however, he died on January 4, 1988.↩
11. Some of the exhibits are illegible and the Court was unable to determine the amount of checks, money orders, and wire transfers from the copies in the record. The totals have been taken from respondent's proposed findings of fact, to which petitioner has not objected.