JOSEPH P. LYNCH, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lynch v. Commissioner
Docket No. 35811-87
United States Tax Court
T.C. Memo 1990-575; 1990 Tax Ct. Memo LEXIS 646; 60 T.C.M. (CCH) 1196; T.C.M. (RIA) 90575; November 1, 1990, Filed *646 Decision will be entered for the respondent. Joseph P. Lynch, pro se. Scott Anderson, for the respondent. RUWE, Judge. RUWE. MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies in petitioner's Federal income taxes and additions to tax as follows: Additions to Tax
Year
Deficiency
Sec. 6653(a)(1) [1]
Sec. 6653(a)(2)
Sec. 6659
1983
$  2,740.79
$ 137.04
50 percent of
$   822.24
the interest
due on $ 2,740.79
1984
13,759.19
687.96
50 percent of
4,127.76
the interest
due on $ 13,759.19
*648 Respondent further determined that petitioner is liable for the increased rate of interest under section 6621(c) for both years in issue. [2]
The issues for decision are: (1) Whether petitioner is entitled to depreciation deductions claimed on his 1983 and 1984 tax returns resulting from his purchases of nontheatrical property rights to a television episode and a motion picture; (2) whether petitioner is liable for the additions to tax, under section 6653(a)(1) and (2) for negligence *649 or intentional disregard of rules and regulations; (3) whether petitioner is liable for the additions to tax under section 6659 for valuation overstatement of property; and (4) whether petitioner is liable for the increased rate of interest under section 6621(c). FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner Joseph P. Lynch resided in Norfolk, Virginia, at the time he filed his petition. Petitioner timely filed his Federal income tax returns for taxable years 1983 and 1984 with the Internal Revenue Service Center in Memphis, Tennessee. The deficiencies in the instant case are based upon two transactions petitioner engaged in with Metropolitan Properties, Inc. (Metropolitan). Petitioner learned about Metropolitan from an advertisement in the Wall Street Journal. Metropolitan purportedly engaged in the sale of nontheatrical property and claimed that it owned over 3,500 such properties. Petitioner received a copy of Metropolitan's "Full Kit" (prospectus), which describes Metropolitan's program as a "Highly Leveraged * * * Investment Tax Shelter. *650 " The prospectus is devoted primarily to a discussion of the purported income tax advantages of a purchase of nontheatrical property rights from Metropolitan. The prospectus also contains a list of film distributors, sample form contracts, and a 63-page tax opinion letter. Petitioner, acting under the name "Reliance Enterprises," entered into a purchase and sale agreement, dated November 30, 1983 with Metropolitan. Under the terms of the agreement, petitioner acquired nontheatrical property rights to a television program titled "Junior Science - Episode #7" (Junior Science). The agreement defined nontheatrical as, in-flights (airlines and ships), television (free and pay, network and syndication) and all other non-theatrical (including, but not limited to, non-commercial hardtop or open air motion picture theatres) media now or in the future existing, from film, videocassette, or disc of any type, gauge or size.
The stated purchase price was $ 22,750. The down payment portion of the purchase price was to be paid by petitioner in three installments as follows: $ 200 at closing; $ 1,650 on or before March 1, 1984; and $ 1,650 on or before May 1, 1984. The *651 balance of $ 19,250 was to be paid by petitioner out of 50 percent of petitioner's gross income from the television episode over a 10-year period, at 9 percent simple interest. [3] Junior Science did not generate any income for petitioner. *652 Petitioner entered into a second purchase and sale agreement with Metropolitan which was dated June 26, 1984. Under the terms of this agreement, petitioner acquired nontheatrical property rights to a motion picture titled "Big Chance," which starred Mickey Rooney and J. Carrol Nash. The stated purchase price was $ 159,250. As part of the purchase, petitioner traded-in the nontheatrical rights he acquired to the television episode Junior Science. The down payment portion of the purchase price of $ 24,500 was to be paid as follows: Payment Date (on or before)
Amount
*
$ 3,500
6/30/84
2,100
12/30/84 2,100
2/28/85
4,200
4/30/85
4,200
6/30/85
4,200
8/30/85
4,200
The balance of $ 134,750 was to be repaid the same as that under the prior agreement, i.e., over a 10-year period out of 50 percent of petitioner's income from the film. After *653 petitioner executed the second agreement to acquire the nontheatrical rights to the motion picture Big Chance, petitioner entered into a "Distribution License Agreement" with Vistar International (Vistar), wherein Vistar agreed to distribute this motion picture. To petitioner's knowledge, Vistar has never distributed or sold any of the nontheatrical film rights to the motion picture Big Chance. Big Chance did not generate any income for petitioner. During the years in issue, petitioner conducted activities under the names, "Financial Resources," "Reliance Enterprises," and "Audio Visual Marketing." The following schedule shows the dates, amounts, and names of the account through which petitioner made payments to Metropolitan during 1983 and 1984: Date
Account
Amount
12/27/83
Financial Resources
$   200
12/30/83
Financial Resources
100
4/ 2/84
Financial Resources
1,365
5/31/84
Audio Visual Marketing
1,485
6/18/84
Financial Resources
100
6/30/84
Financial Resources
2,100
Petitioner did not make any other payments to Metropolitan. Metropolitan has never taken action to enforce the payments called for by either of the purchase and *654 sale agreements it entered into with petitioner. During the years in issue, petitioner was self-employed as a financial consultant and a commercial real estate broker. He is also a certified public accountant. On Schedule C of his 1983 Federal income tax return, petitioner claimed a depreciation deduction in the amount of $ 13,650.00 with respect to his acquisition of the nontheatrical rights to the television program Junior Science. This amount was offset against Schedule C business income reported from petitioner's consulting business. On Schedule C of petitioner's 1984 Federal income tax return, he claimed a depreciation deduction in the amount of $ 43,680.00 with respect to his acquisition of the nontheatrical rights to the motion picture Big Chance. This amount was offset against Schedule C business income from petitioner's real estate business. Respondent disallowed both deductions. OPINION The first issue for decision is whether petitioner is entitled to claim deductions for depreciation with respect the nontheatrical property rights. Respondent's determination is presumed correct, and petitioner bears the burden of proving otherwise. Rule 142(a). In order to *655 be entitled to depreciation deductions with respect to an asset, the asset must be used in a trade or business or held for the production of income within the meaning of section 167(a). Porreca v. Commissioner, 86 T.C. 821, 843 (1986); Beck v. Commissioner, 85 T.C. 557, 569 (1985); Flowers v. Commissioner, 80 T.C. 914, 931 (1983). The trade or business and production of income requirements under section 167 are the same as those under sections 162 and 212. Lemmen v. Commissioner, 77 T.C. 1326, 1340 n.16 (1981). To establish that his activities with respect to Junior Science and Big Chance either constituted a trade or business, or were carried on for the production of income, petitioner must establish that he had "an actual and honest objective of making a profit." Dreicer v. Commissioner, 78 T.C. 642, 646 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983); Dean v. Commissioner, 83 T.C. 56, 74 (1984). While a reasonable expectation of profit is not required, a bona fide objective of making a profit must exist. Taube v. Commissioner, 88 T.C. 464, 478-479 (1987); *656 Dreicer v. Commissioner, supra at 645.This is a factual issue which is to be resolved after considering all the relevant facts and circumstances. Finoli v. Commissioner, 86 T.C. 697, 722 (1986); Engdahl v. Commissioner, 72 T.C. 659, 666 (1979)."Profit" means economic profit, independent of tax savings. Herrick v. Commissioner, 85 T.C. 237, 255 (1985); Seaman v. Commissioner, 84 T.C. 564, 588 (1985); Surloff v. Commissioner, 81 T.C. 210, 233 (1983).Objective facts are given greater weight than a taxpayer's after-the-fact statements. Sec. 1.183-2(a), Income Tax Regs.; Thomas v. Commissioner, 84 T.C. 1244, 1269 (1985), affd. 792 F.2d 1256 (4th Cir. 1986).The burden of establishing the requisite profit objective is on petitioner. Beck v. Commissioner, supra at 569; Rule 142(a). Section 1.183-2(b), Income Tax Regs., sets forth a nonexclusive list of nine objective factors for determining whether an activity is engaged in for profit. These factors are: (1) The manner in which the taxpayer carriers on the activity; (2) the *657 expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) the elements of personal pleasure or recreation. Not all of these factors are applicable in every case and no one factor is controlling. Sec. 1.183-2(b), Income Tax Regs.; Abramson v. Commissioner, 86 T.C. 360, 371 (1986); Allen v. Commissioner, 72 T.C. 28, 33-34 (1979). At the time petitioner made his investments with Metropolitan, he had no prior experience in either the television or motion picture industry. He did not consult with outside experts who would have been in a position to advise petitioner as to the profitability of his investments with Metropolitan. Petitioner did not perform any type of adequate profitability study prior to making his investments with Metropolitan. *658 He did not research the demand for nontheatrical property rights for television episodes and motion pictures, and he failed to make any projections as to the revenues Junior Science and Big Chance were capable of producing. Petitioner testified that he compared the number of movies televised in the Norfolk area during the first week of December 1981 with the number of movies televised in the same area during December 1983, and observed a significant increase in the number of movies televised over this two-year period. Petitioner testified that, based upon this observation, he concluded that there was a tremendous demand tremendous demdnd for television movies. Such limited inquiry prior to making a substantial investment is not indicative of a bona fide profit objective. With respect to Junior Science, petitioner selected this television program because his children had watched it. He did not know when Junior Science was produced or how many other episodes were in existence. He testified to the belief that a television station or cable network would buy his Junior Science episode as part of a group with other Junior Science episodes. He had no idea, however, who owned the other *659 episodes or whether anyone else was attempting to market them, and he exerted no effort to find out this information. Moreover, he never viewed Junior Science, and had no idea what the episode was about, or when it was last televised. Petitioner testified that he traded-in the Junior Science television episode for the motion picture Big Chance, because "it wasn't producing." Petitioner never viewed Big Chance and did not consult any television station or cable program managers prior to purchasing Big Chance. He testified that he believed Big Chance would be profitable because it starred Mickey Rooney. It is apparent, however, that petitioner's primary reason for acquiring Big Chance was to gain substantial depreciation deductions in order to offset other income. Correspondence between Metropolitan and petitioner indicates that petitioner wanted to generate a depreciation deduction for taxable year 1984 of approximately $ 100,000. Metropolitan provided petitioner with a list of films available for purchase that would purportedly achieve this result -- Big Chance was among the films on the list. Petitioner exerted minimal time and effort in carrying on the activity. He failed *660 to introduce evidence of any serious attempts to market the nontheatrical rights. Although he entered into an agreement with Vistar to distribute Big Chance, petitioner had no contact with Vistar after execution of the agreement. Petitioner ceased making payments under the second purchase and sale agreement, and testified that Metropolitan would have to bring a lawsuit in order to enforce their agreement. At the time of trial, Metropolitan had not filed a lawsuit against petitioner. We find that petitioner has not met his burden of proof. Accordingly, petitioner is not entitled to any deduction for depreciation with respect to the nontheatrical rights to Junior Science and Big Chance. The second issue for decision is whether petitioner is liable for the additions to tax under section 6653(a)(1) and (2), for taxable years 1983 and 1984. Section 6653(a)(1) imposes a 5 percent addition to tax if any part of an underpayment of tax is due to negligence or intentional disregard of the rules and regulations. Section 6653(a)(2) provides for a separate addition to tax equal to 50 percent of the interest payable on the portion of the underpayment attributable to negligence or intentional *661 disregard of the rules and regulations. Respondent's determination is presumed correct and petitioner bears the burden of proving otherwise. Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972); Rule 142(a). Negligence within the meaning of section 6653(a) has been defined as the "failure to do what a reasonable and ordinarily prudent person would do under the circumstances." Neely v. Commissioner, 85 T.C. 934, 947 (1985). The only evidence that petitioner offered on this issue was his own testimony that he was neither negligent nor disregarded the rules and regulations. Petitioner is a certified public accountant. He has no experience in television or motion pictures. He failed to consult outside experts, to perform an adequate profitability study, or to seek independent appraisals of his investments with Metropolitan. Petitioner has failed to meet his burden of proof. Accordingly, we sustain the additions to tax under section 6653(a)(1) and (2). The third issue for decision is whether petitioner is liable for the additions to tax for valuation overstatement of property under section 6659. This section imposes a graduated addition to tax on *662 individuals whose underpayment of tax equals or exceeds $ 1,000 and is attributable to a valuation overstatement. Sec. 6659(d). A valuation overstatement exists if "the value of any property, or the adjusted basis of any property, claimed on any return is 150 percent or more of the amount determined to be the correct amount of such valuation or adjusted basis (as the case may be)." Sec. 6659(c)(1). If the valuation claimed exceeds 250 percent of the correct valuation, the addition is equal to 30 percent of the underpayment, but only to the extent attributable to the valuation overstatement. Sec. 6659(b). Where a determination that a taxpayer is not entitled to the claimed deductions is made without regard to any claim of basis or without findings with respect to fair market value, the addition to tax under section 6659 may be inapplicable because the resulting underpayment of tax may be attributable solely to the disallowed deductions, not to a valuation overstatement. Todd v. Commissioner, 862 F.2d 540 (5th Cir. 1988), affg. 89 T.C. 912 (1987); McCrary v. Commissioner, 92 T.C. 827, 854 (1989). In this case, the depreciation deductions *663 were disallowed because of the lack of an actual and honest profit objective associated with the investment. However, we made no findings of fact as to the correct value of the nontheatrical rights that petitioner purportedly acquired from Metropolitan. Thus, the valuation overstatements, if any, regarding the purchase price of the rights were not integral to and inseparable from our disallowance of the depreciation deductions under the profit objective test. Under these circumstances, the addition to tax under section 6659 is not applicable. We hold for petitioner on this issue. The final issue for decision is whether petitioner is liable for the increased rate of interest under section 6621(c). Section 6621(c) provides that, with respect to interest payable under section 6601, an increased rate of interest is imposed when there is a "substantial underpayment" (exceeds $ 1,000) "attributable to one or more tax motivated transactions." The additional interest accrues after December 31, 1984, even though the transaction was entered into prior to the enactment of section 6621(c). Solowiejczyk v. Commissioner, 85 T.C. 552 (1985), affd. per curiam without published *664 opinion 795 F.2d 1005 (2d Cir. 1986).Any deduction disallowed for any period under section 183, relating to an activity engaged in by an individual or an S corporation that is not engaged in for profit, is considered to be attributable to a tax motivated transaction. Sec. 301.6621-2T, A-4(1), Temp. Proced. & Admin. Regs., 49 Fed. Reg. 50392 (Dec. 28, 1984). See Rybak v. Commissioner, 91 T.C. 524, 568 (1988); Clayden v. Commissioner, 90 T.C. 656, 677 (1988).We have sustained respondent's deficiency determination because petitioner has failed to meet his burden of proof that the activity he engaged in was with the requisite profit objective. Accordingly, we sustain respondent's determination that petitioner is liable for the increased rate of interest under section 6621(c). Decision will be entered for the respondent. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Former section 6621(d) was redesignated as section 6621(c) pursuant to section 1511(c), Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2744.↩
3. The agreement designated the balance as a "Contract Receivable." In the event there was a remaining balance at the end of the 10-year period, Metropolitan stated in its prospectus that a "Refinancier" was prepared to refinance the balance of the contract receivable up to any amount. The Refinancier would pay the remaining balance of the contract receivable, and purchaser would be required to repay the Refinancier, at an annual simple interest rate of 5 percent, over another 10-year period from 50 percent of the gross profits generated from the non-theatrical property right. According to the prospectus, this 10-year period could be extended by the purchaser for an additional 20 years. To be eligible for this refinancing option the purchaser was required to pay an annual fee of four-tenths of one-percent of the annual balance.↩
*. The agreement designated this payment as "previously received on prior purchase, [of Junior Science] which is being traded back."↩