WILLIAM E. BARBER and FRANELL BARBER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Barber v. Commissioner
Docket Nos. 16751-83; 30027-85.
United States Tax Court
T.C. Memo 1989-284; 1989 Tax Ct. Memo LEXIS 284; 57 T.C.M. (CCH) 687; T.C.M. (RIA) 89284; June 13, 1989. Kevin O'Connell, for the petitioners. Henry Thomas Schafer and Jo Lynn Littman Ricks, for the respondent. COHEN
MEMORANDUM OPINION COHEN, Judge: In docket No. 16751-83, respondent determined deficiencies of $ 22,197.50 and $ 23,117.50 in petitioners' Federal income taxes for 1979 and 1980. In docket No. 30027-85, respondent determined deficiencies in and additions to petitioners' Federal income taxes as follows: Additions to Tax, I.R.C.
Year
Deficiency
Sec. 6653(a)(1)
Sec. 6653(a)(2)
Sec. 6659
1978
$ 23,605
$ 1,180
N/A
$ 7,081
1981
43,287
2,165
*
9,557
1982
2,789
-
-
-
*285 Respondent also determined that petitioners were liable for additional interest under section 6621(c) for 1978 and 1981 with respect to underpayments of $ 23,605 and $ 31,855, respectively. All section references are to the Internal Revenue Code as amended and in effect for the years in issue. By an Amendment to Answer and Claim for Increased Deficiency in docket No. 16751-83 filed June 30, 1988, respondent claimed increased deficiencies of $ 28,537 and $ 1,665 for 1979 and 1980, respectively, and additions to tax under sections 6653(a) and 6659 on the increased deficiencies claimed. Respondent has not made claim for additional interest under section 6621(c) in docket No. 16751-83. All of the issues affecting the amounts of deficiency have been resolved between the parties. Only additions to tax under sections 6653(a) and 6659 and additional interest under section 6621(c) remain in dispute. All of the facts have been stipulated, and the stipulated facts are incorporated as our findings by this reference. Petitioners were residents of Portland, Oregon, when they filed their petitions. Background
On or about *286 December 16, 1981, petitioner William E. Barber (petitioner) executed an agreement in which he agreed to purchase from Jerden Industries, Inc. (Jerden) for $ 533,000 a master recording of a performance by Claus Ogerman. Petitioner delivered to Jerden a check for $ 13,000, a $ 13,000 "Term Recourse Promissory Note" due December 16, 1982, and a $ 507,000 "Long Term Recourse Promissory Note" due December 16, 1991. Petitioner paid to LaSalle Overseas Bank, Ltd. $ 11,578 designated as a "Loan Commitment Fee." Petitioner also executed a Sales Agency Agreement with First American Records, Inc.
During the years in issue, petitioner was a practicing dentist. Joel B. Shaw (Shaw) served as petitioners' accountant and prepared petitioners' tax returns. Shaw had no knowledge of the music business or recording industry but discussed petitioner's Jerden investment with petitioner before and after the transaction. Relying solely on the tax opinion included in the Jerden promotional materials, Shaw concluded that the Jerden master recording program represented "a legitimate investment." Shaw thereafter prepared a Form 1040, U.S. Individual Income Tax Return, for petitioners for 1981 and a Form *287 1045, Application for Tentative Refund, for 1978, 1979, and 1980. On their 1981 Form 1040, in relation to the master recording, petitioners claimed an $ 80,046 loss, consisting of $ 79,950 depreciation and $ 96 loan fee amortization; a $ 335 investment tax credit; and a refund of $ 16,642 from income tax withheld during 1981. On the Form 1045, they requested refunds of $ 23,605 for 1978, $ 28,537 for 1979, and $ 1,665 for 1980 from claimed investment tax credits. The forms reflected a claimed adjusted basis of $ 533,000 for investment tax credit and depreciation purposes. In December 1981, the fair market value of the master recording was between $ 5,000 and $ 20,000. Petitioners never made any payments on the notes executed at the time of the transaction with Jerden, and they received no income from the investment. In 1983 or 1984, petitioners were advised by the Internal Revenue Service and by a certified public accountant employed by petitioners that the master recording did not support the deductions claimed. They did not claim any deductions attributable to the master recording on their 1982 tax return. The master recording transaction became an issue in docket No. 16751-83 only *288 as a result of the amendment to the answer, and respondent bears the burden of proof with respect to the items remaining in dispute in that case. Rule 142(a), Tax Court Rules of Practice and Procedure. The burden of proof does not affect our decision on any of the issues, however, because all facts relied on in our decision are established by the stipulations. See Marine v. Commissioner, 92 T.C. (May 11, 1989). Respondent's amended answer in docket No. 16751-83 is not specific as to the reasons for disallowing the claimed investment tax credit carrybacks and asserting the additions to tax. In docket No. 30027-85, however, the reasons for disallowing the losses and investment tax credit were set forth in the statutory notice as follows: you [petitioners] have not established that: 1) You acquired sufficient equitable, legal or other interest in the recording(s) to support the claimed losses and investment tax credit(s); 2) You were engaged in a trade or business with respect to your alleged interest in the recording; 3) You held the recording for the production of income; 4) You had a basis in the recording upon which to claim depreciation or investment tax credits; *289 5) You placed the recording in service or acquired recording(s) available to be placed in service for purposes of claiming depreciation or investment tax credit; 6) The method of depreciation claimed bears a proper relationship to the decline in the recordings' usefulness; and 7) The recordings qualify for investment tax credit. Computation of Overvaluation Penalty
Claimed Valuation of Master Recording
$ 533,000.00
Correct Valuation of Master Recording
-0-
Overvaluation
$ 533,000.00
Since the claimed valuation is more than 250 percent of the correct valuation, the addition to tax is 30 percent of the underpayment attributable to the overvaluation. Tax Year
1978
1981
Underpayment Attributable
to Overvaluation
$ 23,605.00
$ 31,855.00
Penalty Rate
30%
30%
Addition to Tax for
Overvaluation Penalty
$  7,081.00
$  9,557.00
In two opinions filed June 9, 1987, Secoy v. Commissioner,T.C. Memo. 1987-286, and McCain v. Commissioner,T.C. Memo. 1987-285, affd. by unpublished order (9th Cir., Feb. 16, 1989), we held that Jerden master recording transactions such as the one entered *290 into by petitioners lacked economic substance and supported additions to tax under sections 6653(a) and 6659 and additional interest under section 6621(c). On October 26, 1987, we filed our opinion in Todd v. Commissioner,89 T.C. 912 (1987), affd. 862 F.2d 540 (5th Cir. 1988). In Todd, we held that an addition to tax under section 6659 would not be imposed when the underpayment of tax was attributable to the failure to place an asset in service rather than a valuation overstatement as defined in section 6659(c), even though a valuation overstatement existed in the reporting of the transaction. (Our position on this issue is the subject of an appeal taken November 23, 1988, to the Court of Appeals for the Ninth Circuit from our decision in Gainer v. Commissioner,T.C. Memo. 1988-416. Although our decision in this case is also appealable to the Court of Appeals for the Ninth Circuit, because we distinguish this case from Todd in the discussion below, the result in this case would appear to be unaffected by the outcome of the appeal in Gainer.) In July 1988, the parties submitted docket No. 30027-85 fully stipulated. Petitioners *291 concede their liability for the deficiencies relating to the master recording. They dispute only the additions to tax and additional interest. Petitioners contend that their concessions preclude application of the addition to tax under section 6659; they rely on Todd v. Commissioner, supra.Docket No. 16751-83 was thereafter submitted on the same issues, and in March 1989 the cases were consolidated for briefing and opinion. In the stipulations, petitioners concede that for Federal income tax purposes they never made a purchase or acquisition of the subject master recording and that the long-term promissory note and related LaSalle Overseas Bank, Ltd. loan commitment are shams, without economic substance. Petitioners take the position that the losses and the investment tax credit are disallowed for the reasons stated in paragraphs 1, 2, 3, and 5, supra, in the statutory notice that is the subject of docket No. 30027-85. Discussion
Section 6653(a)
Petitioners contend that they are not liable for the additions to tax under section 6653(a) because they relied on Shaw in claiming the disallowed deductions and investment tax credits. Taxpayers *292 are not automatically insulated from liability for an addition to tax under section 6653(a) because they relied on a certified public accountant to prepare their tax returns. Shaw did not have or claim any expertise with respect to the investment in issue; their entitlement to the deductions depended on facts known to petitioners as well as to Shaw; and any reliance was not reasonable under the circumstances. See, e.g., McCrary v. Commissioner, 92 T.C. (filed Apr. 17, 1989); Rybak v. Commissioner,91 T.C. 524, 544 (1988). In 1982, petitioners claimed refunds exceeding $ 70,000 based on a cash investment of less than $ 25,000, with no further effort required of them, in an activity in which they had no experience. They are liable for additions to tax for negligence because no reasonable person would have expected this scheme to work. Hanson v. Commissioner,696 F.2d 1232, 1234 (9th Cir. 1983). Section 6659
In Todd, the Court determined after trial that the property in question had not been placed in service. The valuation overstatement was not a ground for our decision. In McCrary v. Commissioner, supra, taxpayers who *293 had engaged in a master recording transaction conceded prior to trial that the controlling agreement, purportedly a lease, was only a license and that, therefore, they were not entitled to the investment tax credit claimed on their return. In Todd and McCrary, we concluded that the underpayments in tax were not attributable to a valuation overstatement, applying a formula whereby the underpayment for purposes of section 6659 is computed only after taking into account other proper adjustments. We stated that we should not be required to determine fair market value merely in order to impose an addition to tax under section 6659. In McCrary v. Commissioner, however, we commented: Taxpayers should be cautioned, however, that a different situation exists where a valuation overstatement or other category of tax-motivated transaction is an integral part of or inseparable from the ground found for disallowance of an item. Irom v. Commissioner,866 F.2d 545 (2d Cir. 1989), revg. T.C. Memo. 1988-211; Soriano v. Commissioner, 90 T.C. [44 (1988)] at 60; Barr v. Commissioner,T.C. Memo. 1989-69; compare Zirker v. Commissioner, *294 87 T.C. [970 (1986)] at 980. * * * [92 T.C. at slip opinion p. 47.] Petitioners in this case have conceded too much to fall within the ambit of Todd and McCrary.
Under section 6659(c), a valuation overstatement is not limited to excessive claims of fair market value. A valuation overstatement also exists if the adjusted basis of any property claimed on any return is 150 percent or more of the amount determined to be the correct adjusted basis. In contrast to a leasing transaction, such as the one involved in McCrary, petitioners' entitlement to depreciation and investment tax credit is here limited by basis, not by fair market value. Compare section 46(c)(1) and section 48(d)(1)(A). Petitioners' concessions compel the conclusion that the transaction was without economic substance and, therefore, they had no basis in the master recording. We have no way of segregating one concession by petitioners from another. The various grounds for disallowance are inseparable under the stipulated facts, and a determination that petitioners had no basis in the master recording is unavoidable. Thus petitioners are subject to the additions to tax under section 6659 *295 to the extent that a portion of the underpayment is attributable to the absence of basis. The deductions claimed in 1981 and the investment tax credits for all years are attributable to claims of basis in an asset in which petitioners had no basis. See Zirker v. Commissioner,87 T.C. 970, 978-979 (1986). The portion of the underpayment attributable to the $ 96 loan fee amortization disallowed for 1981, however, does not support an addition to tax under section 6659. Ferrell v. Commissioner,90 T.C. 1154, 1204 (1988); Soriano v. Commissioner,90 T.C. 44, 61 (1988); Zirker v. Commissioner,87 T.C. at 980. Section 6621(c)
Petitioners contend that because section 6659 does not apply, section 6621(c) does not apply. All of the underpayments, however, are attributable to a tax-motivated transaction for purposes of section 6621(c). Petitioners' concessions bring their master recording transaction within the meaning of "sham or fraudulent transaction" under section 6621(c)(3)(A)(v). Patin v. Commissioner,88 T.C. 1086, 1128-1129 (1987), affd. sub nom. without published opinion Hatheway v. Commissioner,856 F.2d 186 (4th Cir. 1988), *296 affd. sub nom. Skeen v. Commissioner,864 F.2d 93 (9th Cir. 1989), affd. without published opinion Patin v. Commissioner,865 F.2d 1264 (5th Cir. 1989), affd. sub nom. Gomberg v. Commissioner,868 F.2d 865 (6th Cir. 1989). To reflect concessions by the parties and our conclusions set forth above, Decisions will be entered under Rule 155.
Footnotes
*. 50 percent of the interest due on $ 43,287.↩