JAMES G. ALLISON, JR., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Allison v. Commissioner
Docket No. 4958-86
United States Tax Court
T.C. Memo 1991-115; 1991 Tax Ct. Memo LEXIS 128; 61 T.C.M. (CCH) 2163; T.C.M. (RIA) 91115; March 18, 1991, Filed *128 Thomas E. Redding, for the petitioner. Paul J. Krug and Jeffrey N. Kelm, for the respondent. POWELL, Special Trial Judge. [1]
POWELL
MEMORANDUM OPINION This case is before the Court on respondent's Motion for Judgment on the Pleadings. The basic facts relevant to respondent's motion are not in dispute and may be summarized as follows. For the taxable year 1980, petitioner reported taxable income in the amount of $ 1,495,645 determined after claiming an ordinary loss on securities transactions in the amount of $ 2,416,891. In his notice of deficiency, respondent determined that the loss claimed on petitioner's tax returns was not allowable. Respondent also determined that there were due from petitioner additions to tax under section 6653(a) and increased interest under section 6621(d), now section 6621(c), for the year. With *129 regard to the disallowance of the Financial Securities loss (hereinafter referred to as the FSC loss) in 1980, the notice of deficiency stated: I The losses claimed by you in 1980 form [sic] alleged forward contracts involving government securities cannot be recognized since such alleged contracts were illusory and void and in any event such alleged transaction [sic] were shams entered into for tax avoidance purposes. The [FSC] losses claimed by you * * * cannot be recognized, as you have not established that such losses occurred or occurred in the manner claimed. Moreover, it is determined that these transactions lacked economic substance. II Also the allowance of the losses in the year claimed distorts your income (see section 446(b)). In addition, you have not established that such losses were bona fide, or that the transactions were entered into for profit within the meaning of section 165, but on the contrary it would appear that they were entered into solely or primarily to reduce income taxes by converting short term capital gain or ordinary income to long term capital gain income and defer reporting the same. III Additionally, the claimed losses are disallowed *130 because: (1) Such losses arose from the sale or disposition of securities and substantially identical securities[that] were acquired close enough in time to the sale or disposition so that Section 1091 disallows the claimed losses; and (2) Such losses cannot be allowed because it has not been established that you are at risk within the meaning of section 465 in the amount of the claimed losses. IV In the alternative, if it is determined that any portion of the claimed losses * * * is bona fide and otherwise allowable, such losses are capital in character.
At the time the petition was filed, petitioner was a resident of Arkansas. In his petition, petitioner essentially denied each alternative ground stated in respondent's notice. On January 25, 1990, petitioner, however, filed an amended petition that stated: Petitioner concedes the adjustments in 1980 from forward contracts involving government securities through * * * [FSC] based on Respondent's position that "[t]he allowance of the losses in the year claimed distorts your income (see section 446(b))." Petitioner concedes the [FSC] adjustments in 1980 * * * based upon the Respondent's position that "such losses *131 arose from the sale or disposition of securities and substantially identical securities [that] were acquired close enough in time to the sale or disposition so that section 1091 disallows the claimed losses. . . ." * * * Petitioner concedes the [FSC] adjustments in 1980 * * * based upon Respondent's position that Petitioner has not provided adequate records to substantiate the claimed losses.
In his answer to the amended petition, respondent admitted that the FSC losses distorted petitioner's income, that section 1091 applied, and petitioner had not provided adequate records. Respondent further alleged that the FSC losses: (1) involve straddle transactions as defined by I.R.C. § 1092(c), without regard to subsections (d) and (e) of § 1092; (2) that the alleged forward contracts were sham transactions; (3) that the alleged forward contracts involved fradulent [sic] transactions; and (4) that the forward contracts were entered into primarily for tax avoidance purposes and as such are tax motivated transactions. * * * * * * [And,] that the documents and records provided to the respondent by the petitioners [sic] establish that the petitioners [sic] are not entitled *132 to losses claimed in 1980 relating to * * * [FSC], and such documents and records also establish that such forward contracts involve straddle transactions as defined by I.R.C. § 1092(c), without regard to subsection (d) and (e) of § 1092.
In his prayer, respondent pleaded "That the Court determine that the portion of such deficiency for the taxable year 1980 which constitutes a substantial underpayment attributable to tax motivated transaction, for purposes of computing the interest payable on such amount, pursuant to I.R.C. § 6621(c), formerly § 6621(d)." In his reply, petitioner denied that the FSC transactions involved straddles, were shams, involved fraudulent transactions, were entered into primarily for tax avoidance purposes, and were tax motivated transactions. Respondent contends first that judgment on the pleadings with respect to the underlying FSC transaction is appropriate. Petitioner does not object. The second issue raised concerns respondent's contention that judgment on the pleadings is appropriate on the issue whether petitioner is liable for increased interest under the provisions of section 6621(c). [2]Section 6621(c) provides, in relevant part: (1) *133 In General. -- In the case of interest payable under section 6601 with respect to any substantial underpayment attributable to tax motivated transactions, the rate of interest established under this section shall be 120 percent of the underpayment rate established under this subsection. (2) Substantial Underpayment Attributable to Tax Motivated Transactions. -- For purposes of this subsection, the term "substantial underpayment attributable to tax motivated transactions" means any underpayment of taxes imposed by subtitle A for any taxable year which is attributable to 1 or more tax motivated transactions if the amount of the underpayment for such year so attributable exceeds $ 1,000. (3) Tax Motivated Transactions. -- (A) In General. -- For purposes of this subsection, *134 the term "tax motivated transaction" means -- * * * (iv) any use of an accounting method specified in regulations prescribed by the Secretary as a use which may result in a substantial distortion of income * * *. * * * (B) Regulatory Authority. -- The Secretary may by regulations specify other types of transactions which will be treated as tax motivated for purposes of this subsection * * *. In prescribing regulations under the preceding sentence, the Secretary shall take into account - (i) the ratio of the tax benefits to cash invested, (ii) the methods of promoting the use of this type of transaction, and (iii) other relevant considerations.
Respondent contends that since petitioner has conceded in his amended answer that the deductions claimed with respect to the FSC transaction distorted his income and the underpayment resulting therefrom exceeded $ 1,000, all of the requirements of section 6621(c) are met. Petitioner, on the other hand, contends that he also conceded that the FSC losses were barred by section 1091 and that he had not provided adequate records to substantiate the claimed losses. [3] In his view, neither of these concessions would satisfy the requirements *135 of section 6621(c). To understand petitioner's argument we must address several recent opinions of this Court. The Todd-Irom-McCrary opinions, discussed below, involve the treatment of an addition to tax under section 6659 and/or increased interest *136 under section 6621(c). As we pointed out in Todd v. Commissioner, 89 T.C. 912, 917-918 (1987), affd. 862 F.2d 540 (5th Cir. 1988), the application of these two sections is closely related, although the substantive elements are different. In the following discussion, we, therefore, for purposes of this opinion, treat the two sections the same. In Todd v. Commissioner, supra, the taxpayers claimed investment tax credits and deductions for depreciation. Respondent disallowed the credits. In a previous opinion involving several "test case" taxpayers including the Todds ( Noonan v. Commissioner, T.C. Memo 1986-449), the Court had found that the property upon which investment credits and depreciation deductions were claimed had been overvalued, and, therefore, certain taxpayers were liable for additions to tax under section 6659. The Court, however, also found that the property upon which the Todds had claimed the investment credit and deductions had not been placed in service during the year, and, therefore, the credits and depreciation deductions were not allowed. The question in Todd was whether *137 the Todds were also liable for the addition to tax under section 6659 because the value of the property on which the credit and depreciation were claimed on the return was overstated. We determined that the Court could resolve the Todds' case on the ground that the property was not placed in service, rather than on whether the property was overvalued which would have supported the section 6659 addition to tax, and, therefore, concluded that the addition to tax under section 6659 did not apply. We also held that the proper formula for determining the amount of underpayment due to the valuation overstatement was to compare the "actual tax liability (i.e., the tax liability that results from a proper valuation and which takes into account any other proper adjustments) with * * * actual tax liability as reduced by taking into account the valuation overstatement. The difference between these two amounts will be the underpayment that is attributable to the valuation overstatement." 89 T.C. at 916. (Emphasis added.) The Fifth Circuit affirmed. In discussing the formula the Fifth Circuit noted (862 F.2d at 544): "The formula instructs us to determine *138 § 6659 liability 'after' taking account of 'any other proper adjustment to tax liability.' It does not distinguish among other tax adjustments based on their degree of relationship." (Emphasis in original.) The next development was Irom v. Commissioner, T.C. Memo 1988-211, revd. 866 F.2d 545 (2d Cir. 1989). The underlying question was whether the taxpayer was entitled to a deduction for an advance minimum royalty. Respondent disallowed the claimed deduction on the grounds that the payments were not "uniform annual payments" as required by section 1.612-3(b)(3), Income Tax Regs. Respondent also determined that the taxpayer was liable for the increased interest under section 6621(c). Under section 6621(c)(3)(A)(ii), a tax motivated transaction includes any loss disallowed by section 465(a). Respondent moved for summary judgment on this issue relying on section 1.612-3(b)(3), Income Tax Regs. This Court held that the payments involved were not paid in satisfaction of an advance minimum royalty. Respondent, however, had not relied upon section 465(a), and the taxpayer moved for summary judgment on the section 6621(c) issue. This Court *139 held that since no ground for section 6621(c) had been asserted in the motion for summary judgment, the taxpayer's motion should be granted, citing this Court's opinion in Todd v. Commissioner, supra.
The Court of Appeals for the Second Circuit reversed. The court did not reject Todd, but rather found that, unlike Todd (866 F.2d at 547): the Tax Court here found that Irom's investment did not meet the requirements for advanced royalty payments because his financing was non-recourse. The finding of a deficiency on the royalty grounds thus appears to have been inseparable from a finding that the taxpayer was not "at risk" in the transaction.
The case was remanded to determine "whether additional interest was warranted on the grounds asserted by the Commissioner." 866 F.2d at 548. In McCrary v. Commissioner, 92 T.C. 827 (1989), the taxpayer claimed investment credits and other deductions allegedly resulting from a master recording lease program. In the notice of deficiency respondent stated that the deductions and credits were not allowable on the grounds, inter alia, that the transactions *140 lacked economic substance, were not incurred in a trade or business entered into for profit, and violated the "at risk" provision of section 465. Respondent also determined that the increased interest under section 6621(c) was due. Prior to trial, the taxpayer conceded that he was not entitled to the investment credit on the ground that the underlying agreement was not a lease. The case, however, went to trial concerning the deductions claimed. The Court found that "petitioner's transaction * * * lack[ed] economic substance or business purpose [and] is a sham transaction under section 6621(c)(3)(A)(v)." 92 T.C. at 857. While we refused to sanction section 6621(c) interest in that case, we stated (92 T.C. at 859, 860): Taxpayers should be cautioned, however, that a different situation exists where a valuation overstatement or other category of tax-motivated transaction is an integral part of or is inseparable from the ground found for disallowance of an item. * * * the Court of Appeals for the Second Circuit [in the Irom case] seems to have implicitly agreed with the application of the formula in Todd and in this case. * * * [The distinction *141 in Irom], however, should be observed in future cases where grounds for disallowing deductions or investment tax credits are inseparable and at least one such ground is a tax-motivated transaction. [Citations omitted.]
It should be noted that the Ninth Circuit in Gainer v. Commissioner, 893 F.2d 225 (9th Cir. 1990), agreed with the reasoning employed by the Fifth Circuit in Todd and stated that the Second Circuit's Irom opinion is consistent with Todd. Prior to discussing petitioner's arguments, we point out that petitioner resided in Arkansas and the venue for an appeal, if any, would lie in the Court of Appeals for the Eighth Circuit. We are, therefore, not constrained to apply the view of any other circuit. See Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), cert. denied 404 U.S. 940, 30 L. Ed. 2d 254, 92 S. Ct. 284 (1971). Furthermore, as far as we can determine, the Eighth Circuit has not addressed these problems. Petitioner would have us read the Fifth Circuit's opinion in Todd to place a duty on this Court "to determine if * * * [a ground exists that would not support additional *142 interest under section 6621(c)] and decide the case on such ground if it avoids, partially avoids, or reduces [the section] 6621(c) [additional interest]." But this Court has not read the Fifth Circuit's opinion in this fashion. For example, we have refused last-minute concessions that would have obviated section 6621(c) or section 6659. See Diego Investors-IV v. Commissioner, T.C. Memo 1990-102; Morrissey v. Commissioner, T.C. Memo 1989-646. We have also refused to expunge the addition to tax and the increased interest when one, but not all, of the conceded grounds, supports the sanctions under the statutes. Barber v. Commissioner, T.C. Memo 1989-284. The question in this case is whether the "grounds for disallowing deductions or investment tax credits are inseparable and at least one such ground is a tax-motivated transaction." McCrary v. Commissioner, 92 T.C. at 860. Here petitioner has conceded, inter alia, that the losses distorted his income. This on its face is one of the grounds for applying the additional interest.[4]Sec. 6621(c)(3)(A)(iv). Petitioner contends, however, *143 that he conceded the case also on other grounds that would not sustain the additional interest. But, as noted in Barber v. Commissioner, supra (57 T.C.M. 687, 690; T.C.M. (RIA) P89284 at 1426), "We have no way of segregating one concession by petitioners from another." Accordingly, a determination that the claimed losses distorted petitioner's income is unavoidable. Petitioner also contends that the regulations under section 6621(c) are invalid and his concession cannot be construed to be a substantial distortion of income within the meaning of section 6621(c)(3)(A)(iv). The regulations to which petitioner refers detail in question/answer form situations where increased interest will be determined. Section 301.6621-2T, Q-3, Temporary Proced. & Admin. Regs., 49 Fed. Reg. 50392 (Dec. 28, 1984), provides: Q-3. What accounting methods may result in a substantial distortion of income *144 for any period * * *? A-3. A deduction or credit disallowed, or income included, in any of the circumstances listed below shall be treated as attributable to the use of an accounting method that may result in a substantial distortion of income and shall thus be a tax motivated transaction that results in a tax motivated underpayment: * * * (9) In the case of a taxpayer who computes taxable income using the cash receipts and disbursements method of accounting, any deduction disallowed for any period because * * * (iii) the deduction resulted in a material distortion of income (see, e.g., Rev. Rul. 79-229, 1979-2 C.B. 210). (Emphasis added.)
Petitioner contends that the regulations are invalid because, while section 6621(c)(3)(A)(iv) refers to a substantial distortion, the regulations at A-3(9) provide that "any use of the cash method of accounting that results in a material distortion of income constitutes a 'tax motivated transaction.'" (Emphasis in the original.) We need not decide the validity of the regulation or the degree of difference, if any, between the word "material" in the regulation and the word "substantial" in section *145 6621(c)(3)(A)(iv). When, as in this case, a taxpayer reports a taxable income of $ 1,495,645, after claiming a deduction of $ 2,416,891 that concededly distorted his income, the claimed deduction is substantial. Such a distortion fits within section 6621(c)(3(A)(iv). Accordingly, we will grant respondent's motion. An appropriate order will be issued. Footnotes
1. This case was assigned pursuant to section 7443A(b)(4) of the Internal Revenue Code and Rule 180 et seq. All statutory references are to the Internal Revenue Code of 1954, as amended, and as in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise provided.↩
2. Section 6621(c)↩ was repealed effective for returns the due date of which (determined without regard to extensions) was after December 31, 1989. Sec. 7721(b) of the Omnibus Budget Reconciliation Act of 1989, Pub. L. 101-239, 103 Stat. 2106, 2399.
3. It should be noted that petitioner mischaracterizes respondent's position. Respondent has not taken the position that "Petitioner has not provided adequate records to substantiate the claimed losses," as stated in the amended petition. Respondent's positions, as stated in the notice of deficiency, were that "you have not established that such losses occurred or occurred in the manner claimed" and that "you have not established that such losses were bona fide, or that the transactions were entered into for a profit." If petitioner's concession is that the losses were not bona fide and the transactions were not entered into for profit, petitioner concedes that the transactions were shams. See McCrary v. Commissioner, 92 T.C. 827, 857↩ (1989).
4. See also supra note 3 and sec. 6621(c)(3)(A)(v)↩.