T.C. Memo. 1996-45

UNITED STATES TAX COURT

KENT J. AND RUTH W. DAWSON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 25220-93.              Filed February 12, 1996.

<u>Kenneth A. Burns</u>, for petitioners.

<u>David W. Sorensen</u>, for respondent.

MEMORANDUM OPINION

DAWSON, <u>Judge</u>: This case was assigned to Special Trial Judge
Stanley J. Goldberg pursuant to section 7443A(b)(4) and Rules
180, 181, and 183.[1]  The Court agrees with and adopts the opinion
of the Special Trial Judge which is set forth below.

_____

[1]   All section references are to the Internal Revenue Code in
effect for the years in issue.  All Rule references are to the
Tax Court Rules of Practice and Procedure.

OPINION OF THE SPECIAL TRIAL JUDGE

GOLDBERG, Special Trial Judge: Respondent determined the following additions to petitioners' Federal income taxes:

| | | Additions to Tax | | | Additional Interest |
| Year | Sec. 6653(a) | Sec. 6653(a)(1) | Sec. 6653(a)(2) | Sec. 6659 | Sec. 6621(c) |
|---|---|---|---|---|---|
| 1980 | $479 | --- | --- | $ 2,877 | 2 |
| 1981 | --- | $  833 | 1 | 4,996 | 2 |
| 1982 | --- | 737 | 1 | 4,421 | 2 |
| 1983 | --- | 2,812 | 1 | 16,870 | 2 |

[1]  50 percent of the interest payable with respect to the portion of the underpayment attributable to negligence.

[2] 120 percent of the interest payable under section 6601 with respect to any substantial underpayment attributable to tax-motivated transactions.

Following a concession by petitioners,[2] the issues for decision are: (1) Whether petitioners are liable for an addition to tax under section 6653(a) for 1980; (2) whether petitioners are liable for additions to tax under section 6653(a)(1) and (2) for tax years 1981, 1982, and 1983; and (3) whether petitioners are liable for additions to tax under section 6659.

Petitioners were residents of Henderson, Nevada, when the petition was filed in this case. Petitioner Kenneth Dawson (hereinafter referred to as petitioner) is an attorney engaged in the private practice of law, primarily insurance defense and

---

[2]    Although respondent determined increased interest under sec. 6621(c) for all taxable years at issue, petitioners did not raise this issue in their pleadings or during trial.  As such, the issue is deemed conceded.

Government consulting, with the law firm of Dawson and Harding in Las Vegas, Nevada. His wife Ruth Dawson (Mrs. Dawson) is a teacher and was employed by the Clark County School District during the taxable years at issue. On their 1983 joint Federal income tax return, petitioners reported gross income of wages, interest, dividends, capital gains, and other sources in the amount of $894,414. Consequently, in the absence of significant deductions or credits, they would be subject to the payment of a substantial amount of Federal income taxes for 1983.

During 1983, petitioner's law firm experienced a dramatic increase in profits resulting from its participation in litigation involving a fire at the MGM Hotel. Petitioner was aware of this windfall early in the year, and sought investments for his income. After reading an advertisement in a local newspaper that promised tax sheltered investments with a tax write-off ratio of 4 to 1, petitioner contacted Michael Southard (Southard) of the Mission Company. At their first meeting, Southard introduced petitioner to Arthur Geldbach (Geldbach), a self-described specialist in tax sheltered investments and financial consulting. Based solely on Southard's recommendation and Geldbach's promotional material, petitioner hired Geldbach to provide him and his law partner Samuel Harding with financial planning services. For his services, petitioner paid Geldbach an initial fee of $4,000.

Petitioner informed Geldbach that he was seeking the type of investments that would provide initial tax benefits and future income. Geldbach recommended that petitioner invest in a variety of limited partnerships, including Medical Science Associates (MSA).[3] MSA was engaged in the production, marketing, and distribution of medical educational video tapes (the tapes) for continuing medical education of primary care physicians. The tapes were produced by Hahnemann Medical College and Hospital of Philadelphia (Hahnemann) in a series of approximately 20 programs centered around one medical subject area. At issue in this case is the "Therapeutics through Exercise; Sports Medicine and Chronic Pain Management in Clinical Practice" series.

Petitioner was familiar with continuing legal education for attorneys and was aware that similar requirements for physicians were being proposed. Prior to investing in MSA, petitioner consulted with Geldbach with respect to its tax benefits and income potential, and thoroughly reviewed MSA's private placement memorandum (the offering materials or memorandum). Petitioner testified that he also consulted with his accountant David Andrews (Andrews) who informed him that he was not qualified to

---

[3] The remaining partnerships included: (1) Balanced Oil and Gas Drill/Production Fund; (2) Krypton Associates; (3) Genetic Bank, Inc.; (4) Seigler Partners Ltd.; and (5) Finalco Equipment Investors XI. Each reported significant ordinary losses and tax write-offs.

give advice on the matter but was impressed by the information in the offering materials.

The offering materials for MSA consists of 267 pages, a significant portion of which is dedicated to a discussion of the tax aspects of the investments.  For example, in the initial pages of the memorandum, the following information is provided:

Estimated Tax Although Medical Science Associates, Limited
Effect Per    Partnership * * * may have income from its
$30,600 Unit  operations, for illustration purposes, the
              figures below do not take into account any
              income and assume a 50% tax bracket taxpayer.
              The [IRS] may disallow any of the various
              elements used in calculating Partnership
              expenses and credits thereby reducing federal
              income tax benefits of an investment.

|                            | 1983      | 1984      |
|----------------------------|-----------|-----------|
| Capital Contribution       | $15,300   | $15,300   |
| Deductible Loss Equivalent | $44,692   | $47,520   |
| Investment Ratio           | 2.9 to 1  | 3.1 to 1  |

The memorandum goes to describe the risks associated with MSA, including 5 pages dedicated to the tax risks alone.  Included as part of the memorandum is an appraisal by McGraw-Hill Information Systems Company (McGraw-Hill) which determined the fair market value of the tapes to be $877,663.

Petitioner invested $61,200 in MSA during 1983 and signed a promissory note for $61,200 due in 1984.  Shortly thereafter, he began to have misgivings regarding the partnership.  In January 1984, when petitioner received a second invoice in the amount of $5,000 from Geldbach for services to be rendered, he expressed

concerns about the return of his investment.  In a letter dated May 29, 1984, in response to a conversation held on May 22, the general partner of MSA Jules Klar (Klar), reassured petitioner that the Internal Revenue Service had not audited the partnership returns to date and he had no indication that such a challenge would be forthcoming.

In July 1984, Andrews wrote a letter to Samuel Harding in reference to his introduction to Geldbach.  Andrews stated:

> You asked me how I got acquainted with Arthur Geldbach.  My memory will, perhaps, be faulty with specific details but I remember the gist of the matter.
>
> In the late spring or early summer of 1984, Art and I met during a backyard party at the home of a mutual friend.* * *
>     *     *     *     *     *
>
> The next week, we met at the Port Tack Restaurant [to discuss the investments he had presented to you].  I told him I was unable to judge the quality of the partnership investments but that I had serious misgivings about [MSA]. I also told him that you and [petitioner] were less than happy for me to direct them to staple checks to their 1983 tax return extension requests.  He said that [MSA] was an excellent "tax shelter" and he owned an interest in it also. I told Art that until the IRS examined, neither of us would ever know for sure. Art said he was proud of the investments he had sold you and [petitioner].  He said he was confident they would perform well both as to investment quality and tax advantages, and that he had done a good job in selecting them for you.  I interpreted these remarks as meaning he had performed "due diligence" in reviewing their quality.
>
> As to the fact that you had to pay tax for 1983, he said your tax was extremely small compared to your income.  My response was that $60,000 was still a huge surprise to you when you had expected none.  Art said you were unrealistic to interpret Mr. Barney's opinion to mean no tax at all.
>
> Since that lunch, Art and I have had no contact. In fact, we avoid each other when circumstances put us in the same room.

I guess it would be awkward for us to talk about anything, including the weather.

Sam, I hope this limited amount of information has some usefulness for you and [petitioner]. Frankly, I never dreamed four years ago that I would need to reconstruct my slight involvement with a "peripheral" fellow being. [Emphasis added.]

In August 1984, Gersten, Savage, Kaplowitz & Simensky (Gersten), the law firm representing the partnership, wrote petitioner and demanded the second payment of $61,200. Gersten explained that failure to pay would result in a forfeiture of petitioner's partnership interest and a loss of all tax advantages stemming from MSA in 1984. Petitioner assured Gersten that payment was forthcoming but that it was made with "great reluctance" and that it should "not be construed as a waiver of any claims" which may arise from his investment in MSA.[4]

In October 1984, petitioners filed their 1983 joint Federal income tax return, wherein they claimed an ordinary loss of $35,539 and an investment tax credit of $79,441 relating to their investment in MSA. The tax credit was calculated using the unadjusted basis ($993,014) of the tapes as reported by MSA on the Schedule K-1. Petitioner also claimed carryback credits for

---

[4] In 1985, petitioner filed suit against Geldbach and Klar, and joined in a suit against McGraw-Hill allegedly for preparation of a fraudulent appraisal.

the taxable years 1980, 1981, and 1982 in the respective amounts of $9,589, $16,653, and $14,738.

In Charlton v. Commissioner, T.C. Memo. 1990-402, affd. 990 F.2d 1161 (9th Cir. 1993), a test case involving limited partnerships engaged in the production, marketing, and distribution of similar tapes (the CME Partnerships), this Court found: (1) The transaction was not engaged in for profit; (2) that the appraisal grossly overstated not only the quality and value of the tapes but also the sales forecast; and (3) that the transaction was a sham because it lacked economic substance and a business purpose. We upheld the section 6661 addition to tax for substantial understatement of tax, and found that losses and credits claimed with respect to the CME partnerships were attributable to tax-motivated transactions within the meaning of section 6621(c). The underlying transaction in the instant case is in all material respects identical to the transaction considered in the Charlton case.

In the notice of deficiency, respondent determined that petitioners were negligent in claiming their distributive share of MSA losses and investment tax credits. As such, she determined that they are liable for additions to tax under section 6653(a) for 1980, and sections 6653(a)(1) and (2) for 1981 through 1983. Respondent also determined that petitioners are liable for additions to tax under section 6659 for 1980

through 1983. Petitioners concede they are liable for the income tax deficiencies exclusive of additions to tax. However, petitioner argues that the circumstances of this case differ from those of the taxpayers in Charlton in that he was not negligent. Therefore, petitioner contends that he should not be held liable for additions to tax as determined by respondent.

Section 6653(a) for taxable year 1980 and section 6653(a)(1) for taxable years 1981, 1982, and 1983, provide that if any portion of an underpayment of tax is due to negligence or intentional disregard of rules and regulations, an amount equal to 5 percent of the underpayment is added to the tax. Section 6653(a)(2) for taxable years 1981 through 1983 provides for an addition to tax equal to 50 percent of the interest on the portion of the negligence. Negligence is defined as the failure to exercise the due care that a reasonable and ordinarily prudent person would employ under the circumstances. Zmuda v. Commissioner, 731 F.2d 1417, 1422 (9th Cir. 1984), affg. 79 T.C. 714 (1982); Neely v. Commissioner, 85 T.C. 934, 947 (1985). The question is whether a particular taxpayer's actions in connection with the transactions were reasonable in light of his experience and the nature of the investment or business. See Henry Schwartz Corp. v. Commissioner, 60 T.C. 728, 740 (1973). Respondent's determinations are presumed correct and petitioners bear the burden of establishing otherwise. Hall v. Commissioner, 729 F.2d

632, 635 (9th Cir. 1984), affg. T.C. Memo. 1982-337; Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972).

Petitioner maintains that he acted reasonably and with all due care in claiming deductions and credits with respect to his investment in MSA. In support thereof, petitioner argues: (1) He relied on advice from an independent financial planner; (2) he relied on an appraisal of the tapes prepared by a well known and respected company; (3) he was familiar with the use of videos for continuing professional education; (4) he did not have time during 1983 to independently investigate each partnership he invested in; and (5) he monitored his investment and filed suit against those involved when MSA did not perform as expected.

Under certain circumstances, a taxpayer may avoid liability for the additions to tax under section 6653(a) if reasonable reliance on a competent professional advisor is shown. Freytag v. Commissioner, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991). Reliance on advice of a professional is not, standing alone, an absolute defense to negligence, but rather a factor to be considered. Id. In order for reliance on professional advice to excuse a taxpayer from the negligence additions to tax, the reliance must be reasonable, in good faith, and based upon full disclosure. Id.

A taxpayer's reliance on representations by insiders, promoters, or offering materials has been found to be an

inadequate defense to negligence. LaVerne v. Commissioner, 94 T.C. 637, 652-653 (1990), affd. without published opinion 956 F.2d 274 (9th Cir. 1992), affd. without published opinion sub nom. Cowles v. Commissioner, 949 F.2d 401 (10th Cir. 1991); Marine v. Commissioner, 92 T.C. 958, 992-993 (1989), affd. without published opinion 921 F.2d 280 (9th Cir. 1991); McCrary v. Commissioner, 92 T.C. 827, 850 (1989). We have rejected pleas of reliance when neither the taxpayer nor advisers purportedly relied upon knew anything about the nontax business aspects of the contemplated venture. Beck v. Commissioner, 85 T.C. 557 (1985); Flowers v. Commissioner, 80 T.C. 914 (1983).

Petitioner essentially argues that he reasonably relied on the purported value of the tapes as set out in the offering materials and on statements made by Geldbach as to the legitimacy of the investment. In light of the size of his investment and the proportionately large tax write-offs, further investigation by petitioner was mandated. Saviano v. Commissioner, 765 F.2d 643, 654 (7th Cir. 1985), affg. 80 T.C. 955 (1983). While petitioner consulted with his accountant, he did so after making his investment, and after considering the information he received from Andrews and Geldbach. Andrews had no experience in continuing medical education or the use of tapes for that purpose and based his opinion that "due diligence" had been done simply on Geldbach's assurances. Moreover, prior to his investment in

MSA, both Geldbach and Southard were unknown to petitioner. We cannot say that reliance on the advice of virtual strangers who promoted MSA amounts to reasonable conduct. Such reliance is not the type of activity that overcomes the additions to tax for negligence or intentional disregard of the rules or regulations. Patin v. Commissioner, 88 T.C. 1086, 1130 (1987), affd. without published opinion 865 F.2d 1264 (5th Cir. 1989), affd. sub nom. Gomberg v. Commissioner, 868 F.2d 865 (6th Cir. 1989), affd. sub nom. Skeen v. Commissioner, 864 F.2d 93 (9th Cir. 1989), affd. without published opinion sub nom. Hatheway v. Commissioner, 856 F.2d 186 (4th Cir. 1988).

Petitioner points to his reliance on the appraisal prepared by McGraw-Hill as evidence of his reasonable and prudent conduct. However, the appraisal was part and parcel of the memorandum and may not be considered unbiased and independent information. In addition, a thorough reading of the appraisal indicates that the calculation of the fair market value of the tapes was based on many assumptions, several of which are in direct conflict with information provided elsewhere in the memorandum. Petitioner's argument that the cost of an independent appraisal would have been prohibitive is unconvincing. See Kirwan v. Commissioner, T.C. Memo. 1994-520.

Petitioner cites Mollen v. United States, 72 AFTR2d 93-6443), 93-2 USTC par. 50,585 (D. Ariz. 1993), in support of his

position that he reasonably relied on the advice of independent parties. Petitioner contends that the factors considered by the Court in Mollen are generally applicable to the instant case. The underlying transaction in Mollen is in all material respects identical to the transactions at issue in this case and that of Charlton v. Commissioner, T.C. Memo. 1990-402. However, the facts and circumstances surrounding the taxpayer in Mollen and his investment in the limited partnership Diabetics CME Group, Ltd. (Diabetics) are distinguishable from the instant case.

The taxpayer in Mollen was a physician specializing in the study of diabetes and a leader of a continuing medical education (CME) accreditation program for a local hospital. He served on a committee in charge of evaluating CME programs and had a prior association with Hahnemann. Prior to investing in Diabetics, he consulted with his personal accountant and a tax attorney. The taxpayer had no prior business experience. Petitioner, on the other hand, is a sophisticated attorney with business experience and knowledge of investments, as evidenced by his interest in a real estate partnership and rental properties. Petitioner had no expertise in medicine or therapeutic exercise. His experience with continuing legal education does not equate to a knowledge of the nontax business activities of MSA. Petitioner also relied on the advice of an adviser to whom he had just been introduced by an unknown promoter of tax shelters. We find Mollen v. United

States, supra, to be distinguishable and not binding on this Court.

Petitioner also cites Pelham v. Commissioner, T.C. Memo. 1993-441 in support of his case. The taxpayers in Pelham were uneducated and unsophisticated investors who were introduced to their financial planner by their personal accountant, with whom they had a prior relationship of trust. They invested in a tax shelter based on the assurances of their accountant and the financial planner, who was later indicted for fraud and filing fraudulent tax returns. Clearly, petitioner is distinguishable from the taxpayers in Pelham.

Petitioner attempts to distinguish himself from the taxpayers in Charlton v. Commissioner, supra, by arguing that he relied on independent counsel and specifically on the appraisal by McGraw-Hill. We find petitioner's reliance to be inadequate; as an attorney he should have exercised more care. While he did not have considerable experience with tax shelters, petitioner is well educated and was sophisticated in business. By his own testimony, petitioner owned and managed a law firm that at one time employed 18 or 19 attorneys, and he earned close to $900,000 in fees during 1983. We conclude that a reasonable person with his background would have been on notice that further investigation of the investment in MSA was warranted.

Petitioner contends that his continued monitoring of his investment and the subsequent litigation against Geldbach and McGraw-Hill demonstrate that he had a bona fide profit motive in investing in MSA. However, much of the correspondence received by petitioner in response to his concerns primarily addressed the validity of the tax benefits of the partnership, not the income potential. In addition, petitioner made a second investment in MSA during 1984, well after he began to have serious doubts about MSA and its ability to withstand an audit by the Internal Revenue Service. Petitioners filed their 1983 Federal income tax return in October 1984, wherein they claimed their distributive share of partnership losses and credits, well after both they and Andrews voiced concerns about the credibility of the investment.

We are not persuaded that petitioner lacked interest in the tax benefits generated by MSA. He testified that he was seeking an investment that provided initial tax benefits. According to the memorandum, the projected benefits for investors of $30,600 were investment tax credits and losses exceeding the investment by a ratio of 2.9 to 1 in 1983, and 3.1 to 1 in 1984. In the first year, petitioners claimed an operating loss in the amount of $35,539 and credits totaling $79,441, while petitioners' investment was only $61,200. The direct reductions in petitioners' Federal income tax equaled 188 percent of their cash investment. Given that petitioners' gross income for 1983

approximated $900,000, their alleged lack of interest in the tax benefits generated by MSA is unconvincing.

We are also unpersuaded by petitioners' argument that because of his busy law practice and heavy responsibilities with the MGM disaster litigation, he could not be expected to spend time investigating the MSA partnership. Petitioner claims that he hired a financial planner so that he would not have to spend his time or resources investigating potential investments. In our view, despite his numerous responsibilities, petitioner is required to exercise due care with respect to his Federal income taxes. Wilson v. Commissioner, T.C. Memo. 1995-525.

Based on the foregoing we find that petitioner failed to establish that he acted in a reasonable and prudent manner when he invested in MSA. Accordingly, we find petitioners were negligent in claiming the loss and credits on their returns for the taxable years at issue. Respondent's determination of the additions to tax under section 6653(a) for 1980 and 6653(a)(1) and (a)(2) for 1981, 1982, and 1983 is sustained.

We next consider whether petitioners are liable for additions to tax under section 6659. Under this section, a graduated addition to tax is imposed when an individual has an underpayment of tax that equals or exceeds $1,000 and "is attributable to" a valuation overstatement. Sec. 6659(a), (d). A valuation overstatement exists if the fair market value (or

adjusted basis) of property claimed on a return equals or exceeds 150 percent of the amount determined to be the correct amount. Sec. 6659(c). If the claimed valuation exceeds 250 percent of the correct value, the addition is equal to 30 percent of the underpayment. Sec. 6659(b).

Petitioners claimed an operating loss and investment tax credits based on purported values of $993,014 for the tapes. This Court found in Charlton v. Commissioner, T.C. Memo. 1990-402, that the tapes were grossly overvalued. We find that if disallowance of petitioners' claimed tax benefits is attributable to valuation overstatement, petitioners are liable for the section 6659 additions to tax at the rate of 30 percent of the underpayments of tax attributable to the tax benefits claimed with respect to MSA.

Section 6659 does not apply to underpayments of tax that are not "attributable to" valuation overstatements. See McCrary v. Commissioner, 92 T.C. 827 (1989); Todd v. Commissioner, 89 T.C. 912 (1987), affd. 862 F.2d 540 (5th Cir. 1988). To the extent taxpayers claim tax benefits that are disallowed on grounds separate and independent from alleged valuation overstatements, the resulting underpayments of tax are not attributable to valuation overstatements. Krause v. Commissioner, 99 T.C. 132, 178 (1992), affd. sub nom. Hildebrand v. Commissioner, 28 F.3d 1024 (10th Cir. 1994). However, when valuation is an integral

factor in disallowing deductions and credits, section 6659 is applicable. See Illes v. Commissioner, 982 F.2d 163, 167 (6th Cir. 1992) (section 6659 addition to tax applies if a finding of lack of economic substance is "due in part" to a valuation overstatement), affg. T.C. Memo. 1991-449.

Petitioners concede they are not entitled to any losses or credits arising from their investment in MSA. The record in this case and the test case of Charlton v. Commissioner, supra, clearly shows that the overvaluation of the tapes was integral to and was the core of our holding that the underlying transaction herein was a sham and lacked economic substance. When a transaction lacks economic substance, section 6659 will apply because the correct basis is zero and any basis claimed in excess of that is a valuation overstatement. Gilman v. Commissioner, 933 F.2d 143, 151 (2d Cir. 1991), affg. T.C. Memo. 1989-684; Rybak v. Commissioner, 91 T.C. 524, 566-567 (1988). Accordingly, we conclude that the deficiency caused by the disallowance of the claimed loss and credits was attributable to the overvaluation of the tapes.

Petitioners contend that respondent abused her discretion in failing to waive the section 6659 additions to tax pursuant to section 6659(e). Section 6659(e) authorizes respondent to waive all or part of the addition to tax for valuation overstatements if taxpayers establish that there was a reasonable basis for the

adjusted basis or valuations claimed on the returns and that such claims were made in good faith.  Respondent's refusal to waive a section 6659 addition to tax is reviewable by this Court for abuse of discretion.  <u>Krause v. Commissioner</u>, 99 T.C. at 179.

Petitioner argues that he arrived at his valuation of the tapes by virtue of his relying on Geldbach and Andrews, and on an appraisal prepared by McGraw-Hill, in addition to representations made in the offering materials.  He contends that such reliance was reasonable, and, therefore, respondent should have waived the section 6659 addition to tax.  We have found that petitioner's reliance on the above was not reasonable because neither Geldbach nor Andrews had expertise in continuing medical education, the offering materials contained numerous disclaimers and stated that prior similar ventures had not been as successful as predicted, and petitioner did not perform any independent investigation into the history, experience, credibility, reputation, or finances of MSA or its promoters.

Petitioners did not have a reasonable basis for the adjusted base or valuation claimed on their 1983 return with respect to their investment in MSA.  The record does not establish an abuse of discretion on the part of respondent with respect to the addition to tax under section 6659.  In addition, the record fails to indicate that petitioners ever requested a waiver from respondent pursuant to section 6659(e) until briefing after

trial.  We are reluctant to find that respondent abused her discretion here when, for all the record shows, she was not even timely requested to exercise it.  See <u>Wilson v. Commissioner</u>, T.C. Memo. 1995-525 (citing <u>Haught v. Commissioner</u>, T.C. Memo. 1993-58; <u>Lapin v. Commissioner</u>, T.C. Memo. 1990-343, affd. without published opinion 956 F.2d 1167 (9th Cir. 1992).  Accordingly, respondent is sustained on this issue.

<u>Decision will be entered</u>

<u>for respondent</u>.